[No. C056249. Third Dist. Aug. 19, 2008.]

THE PEOPLE, Plaintiff and Respondent, v.
RICHARD LEIGH WYATT, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION*]**

---

*Pursuant to California Rules of Court, rule 8.1110, this opinion is certified for publication with the exception of part III of the Discussion.

## COUNSEL

John F. Schuck, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette and Michael P. Farrell, Assistant Attorneys General, Carlos A. Martinez and Marcia A. Fay, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**SIMS, J.**—Following the denial of his motion to suppress evidence, a jury found defendant Richard Leigh Wyatt guilty of possessing paraphernalia (a syringe) and possessing or manufacturing a weapon (a metal shank) while in jail. (Pen. Code, §§ 4573.6, 4502, subd. (a); undesignated section references are to the Penal Code.) In a bifurcated proceeding, the trial court found true allegations defendant served two prior prison terms (§ 667.5, subd. (b)) and had two serious or violent felony convictions within the meaning of the three strikes law (§ 1170.12).

The trial court refused to dismiss either of defendant's prior strike convictions and sentenced him to an aggregate term of 50 years to life in prison, consisting of 25 years to life for possessing the syringe and 25 years to life for possessing or manufacturing the shank. The court stayed defendant's sentence on the two prior prison term enhancements.

Defendant appeals, contending the trial court erred in (1) denying his motion to suppress statements he made to a Shasta County Sheriff's deputy while in jail, (2) failing to instruct the jury that it must find "each element of a crime" true beyond a reasonable doubt, and (3) denying his motion to dismiss one or both of his prior strike convictions. Finding no error, we shall affirm.

## DISCUSSION

### I

#### A. *Procedural Background and Facts*

Defendant moved in limine to suppress statements he made during an interview with Deputy Mark Davis on January 15, 2007. (§ 1538.5.) Viewed in the light most favorable to the trial court's denial of the motion (*People v. Jenkins* (2000) 22 Cal.4th 900, 969 [95 Cal.Rptr.2d 377, 997 P.2d 1044]), the evidence introduced at the suppression hearing was as follows: On January 8, 2007, defendant was incarcerated at the Shasta County jail. Deputies searched his cell and found a syringe and a metal shank. Defendant was "accused of violating the following rule(s) or regulation(s): poss[ession] of syringe, shank, [and] contraband, extortion, gambling, [and] fighting." He was advised of the charges against him and that he may be subject to a variety of penalties, including criminal prosecution, as a result of the charges. He was also

advised of the "INMATE RIGHTS IN DISCIPLINE PROCEDURE," which included the right to "receive 24 hour prior notice of" a disciplinary hearing, the right to "receive a copy of the Incident Report within 24 hours of the completed report," the right to be present at the hearing, the right to call witnesses at the hearing, and the right to represent oneself or be represented by a staff member at the hearing.

According to the hearing report, defendant declined to waive a disciplinary hearing, and one was held on January 10, 2007. Defendant was present at the hearing and indicated he "wish[ed] to have [an] attorney present in case criminal proceedings [we]re brought forth." The hearing officer noted defendant "refuse[d] [to make a] statement due to being in [a] criminal investigation" and found defendant "guilty by report." The hearing officer recommended defendant spend 30 days in "lockdown" and lose all privileges.

Five days later, on January 15, 2007, Deputy Davis brought defendant into an interview room at the jail and read defendant his *Miranda* rights. (*Miranda v. Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602] (*Miranda*).) Defendant agreed to waive his rights, and Davis questioned him about the items found in his cell. Defendant admitted possessing the syringe and shank.

In his motion to suppress, defendant argued his request to have counsel present at the disciplinary hearing on January 10, 2007, constituted an invocation of his Fifth Amendment right to counsel under *Miranda*, and thus, Deputy Davis was precluded from "re-questioning" defendant on "the same set of facts" on January 15, 2007, pursuant to *Edwards v. Arizona* (1981) 451 U.S. 477 [68 L.Ed.2d 378, 101 S.Ct. 1880] (*Edwards*). The People opposed the motion, arguing the disciplinary hearing was not a "custodial interrogation" for purposes of *Miranda*, and thus, Deputy Davis was not precluded from questioning defendant on January 15, 2007. Alternatively, the People argued defendant did not have a Fifth Amendment right to counsel at a disciplinary hearing, and thus, could not have invoked that right. The trial court tentatively ruled the disciplinary hearing was an administrative hearing and not a custodial interrogation. The court also found defendant did not invoke his right to counsel at the hearing because he did not have a right to counsel at the hearing. Thus, the court concluded, "the [January 15, 2007] interview was properly conducted, provided . . . defendant was then provided all his *Miranda* rights." The court later affirmed its tentative ruling and denied the motion to suppress.

At trial, Deputy Davis testified he spoke to defendant on January 15, 2007, and after being advised of and waiving his *Miranda* rights, defendant admitted the syringe recovered from his cell was his and said he used it to

inject methamphetamine. Defendant also stated he obtained a piece of metal from another cell, sharpened it into a shank, and had it for protection.

Defendant testified in his own defense. He had approximately five bunkmates during the time he was housed in the cell in which the items were found. He admitted telling Deputy Davis the syringe was his. He did so because he thought the deputies might "give [him] a special visit" with his fiancée and to avoid being labeled a "snitch." He denied telling Davis the shank was his. Rather, he told Davis, "That's definitely not mine. I don't know nothing about that shank."

On appeal, defendant contends the disciplinary hearing constituted a custodial interrogation for purposes of *Miranda* because his "alleged possession of the syringe and the shank could readily subject him to criminal prosecution in addition to jail sanctions." He claims he invoked his Fifth Amendment rights to counsel and to remain silent when he requested an attorney at the hearing and thereafter refused to make a statement. Having invoked those rights, he asserts Deputy Davis was precluded from questioning him on January 15, 2007, even after advising him of his *Miranda* rights. As we will explain, his argument fails on the merits.

B.   *Legal Analysis*

"In considering a claim that a statement or confession is inadmissible because it was obtained in violation of a defendant's rights under *Miranda* . . . , we accept the trial court's resolution of disputed facts and inferences, and its evaluation of credibility, if supported by substantial evidence. (*People v. Kelly* (1990) 51 Cal.3d 931, 947 [275 Cal.Rptr. 160, 800 P.2d 516].) Although we independently determine whether, from the undisputed facts and those properly found by the trial court, the challenged statements were illegally obtained (*ibid.*), we ' "give great weight to the considered conclusions" of a lower court that has previously reviewed the same evidence.' (*People v. Jennings* (1988) 46 Cal.3d 963, 979 [251 Cal.Rptr. 278, 760 P.2d 475], quoting *Miller v. Fenton* (1985) 474 U.S. 104, 112 [88 L.Ed.2d 405, 412, 106 S.Ct. 445]; accord, *People v. Kelly, supra,* 51 Cal.3d at p. 947.)" (*People v. Wash* (1993) 6 Cal.4th 215, 235–236 [24 Cal.Rptr.2d 421, 861 P.2d 1107], followed in *People v. Whitson* (1998) 17 Cal.4th 229, 248 [70 Cal.Rptr.2d 321, 949 P.2d 18].)

Defendant contends his statements to Deputy Davis were obtained in violation of the rights guaranteed him by *Edwards, supra,* 451 U.S. 477 [68 L.Ed.2d 378]. For reasons that follow, we disagree.

The facts in *Edwards* are described by the Supreme Court as follows:

"On January 19, 1976, a sworn complaint was filed against Edwards in Arizona state court charging him with robbery, burglary, and first-degree murder. An arrest warrant was issued pursuant to the complaint, and Edwards was arrested at his home later that same day. At the police station, he was informed of his rights as required by *Miranda* . . . . Petitioner stated that he understood his rights, and was willing to submit to questioning. After being told that another suspect already in custody had implicated him in the crime, Edwards denied involvement and gave a taped statement presenting an alibi defense. He then sought to 'make a deal.' The interrogating officer told him that he wanted a statement, but that he did not have the authority to negotiate a deal. The officer provided Edwards with the telephone number of a county attorney. Petitioner made the call, but hung up after a few moments. Edwards then said: 'I want an attorney before making a deal.' At that point, questioning ceased and Edwards was taken to county jail.

"At 9:15 the next morning, two detectives, colleagues of the officer who had interrogated Edwards the previous night, came to the jail and asked to see Edwards. When the detention officer informed Edwards that the detectives wished to speak with him, he replied that he did not want to talk to anyone. The guard told him that 'he had' to talk and then took him to meet with the detectives. The officers identified themselves, stated they wanted to talk to him, and informed him of his *Miranda* rights. Edwards was willing to talk, but he first wanted to hear the taped statement of the alleged accomplice who had implicated him. After listening to the tape for several minutes, petitioner said that he would make a statement so long as it was not tape-recorded. The detectives informed him that the recording was irrelevant since they could testify in court concerning whatever he said. Edwards replied: 'I'll tell you anything you want to know, but I don't want it on tape.' He thereupon implicated himself in the crime." (*Edwards, supra*, 451 U.S. at pp. 478–479 [68 L.Ed.2d at pp. 382–383], fns. omitted.)

■ The Supreme Court held that defendant Edwards's statements should have been suppressed. (*Edwards, supra*, 451 U.S. 477, 487 [68 L.Ed.2d at p. 388].) The court held that "it is inconsistent with *Miranda* and its progeny for the authorities, at their instance, to reinterrogate an accused in custody if he has *clearly* asserted his right to counsel." (*Id.* at p. 485 [68 L.Ed.2d at p. 387] (second italics added).)

As is obvious, *Edwards* applies only where defendant has "clearly" asserted his right to counsel.

■ "The applicability of the ' "rigid" prophylactic rule' of *Edwards* requires courts to 'determine whether the accused *actually invoked* his right

to counsel.' *Smith* v. *Illinois* [(1984) 469 U.S. 91,] 95 [83 L.Ed.2d 488, 105 S.Ct. 490] (emphasis added), quoting *Fare* v. *Michael C.*, [(1979)] 442 U.S. 707, 719 [61 L.Ed.2d 197, 99 S.Ct. 2560]. To avoid difficulties of proof and to provide guidance to officers conducting interrogations, this is an objective inquiry. See *Connecticut* v. *Barrett*, [(1987) 479 U.S. 523,] 529 [93 L.Ed.2d 920, 107 S.Ct. 828]. Invocation of the *Miranda* right to counsel 'requires, at a minimum, some statement that can reasonably be construed to be an expression of a desire for the assistance of an attorney.' *McNeil* v. *Wisconsin*, [(1991)] 501 U.S. [171,] 178 [115 L.Ed.2d 158, 111 S.Ct. 2204]. But if a suspect makes a reference to an attorney that is ambiguous or equivocal in that a reasonable officer in light of the circumstances would have understood only that the suspect *might* be invoking the right to counsel, our precedents do not require the cessation of questioning. See *ibid.* ('[T]he *likelihood* that a suspect would wish counsel to be present is not the test for applicability of *Edwards*'); *Edwards* . . . , *supra*, at 485 [68 L.Ed.2d 378, 101 S.Ct. 1880] (impermissible for authorities 'to reinterrogate an accused in custody if he has *clearly asserted* his right to counsel') (emphasis added).

"Rather, the suspect must unambiguously request counsel." (*Davis v. United States* (1994) 512 U.S. 452, 458–459 [129 L.Ed.2d 362, 371, 114 S.Ct. 2350] (*Davis*); see *People v. Simons* (2007) 155 Cal.App.4th 948, 957–958 [66 Cal.Rptr.3d 571].)

■ Moreover, for purposes of *Miranda* and its progeny, a request for counsel "requires, at a minimum, some statement that can reasonably be construed to be an expression of a desire for the assistance of an attorney *in dealing with custodial interrogation by the police.*" (*McNeil v. Wisconsin*, *supra*, 501 U.S. 171, 178 [115 L.Ed.2d 158, 169] (*McNeil*).)

■ Here, to be sure, defendant requested counsel at the disciplinary hearing, but the circumstances of the request made the request ambiguous with respect to whether it would apply to a subsequent independent custodial interrogation. This is so because the United States Supreme Court has squarely held that a prisoner is not entitled to representation by either retained or appointed counsel at prison disciplinary hearings. (*Baxter v. Palmigiano* (1976) 425 U.S. 308, 315 [47 L.Ed.2d 810, 819, 96 S.Ct. 1551].) Moreover, the in-prison disciplinary hearing was not a custodial interrogation within the meaning of *Miranda* and *McNeil*, *supra*, 501 U.S. 171, for the simple reason that, so far as the record discloses, defendant was not asked any questions and remained silent. Accordingly, when defendant requested counsel at the disciplinary hearing, he asserted a right that did not exist in that setting.

■ Did defendant's request for counsel at the disciplinary hearing constitute a request for counsel in the altogether different setting of a custodial

interrogation? In our view, the situation was, at best, objectively ambiguous, particularly as the law enforcement authorities must have viewed it. Law enforcement authorities are lawfully permitted to "clarify" whether a suspect intends to remain silent, and to invoke his *Miranda* rights, where a defendant's request for counsel is ambiguous. (*Davis, supra,* 512 U.S. at p. 461 [129 L.Ed.2d at p. 373]; *People v. Simons, supra,* 155 Cal.App.4th at p. 958.) This is precisely what Deputy Davis did on January 15, 2007, when he summoned defendant to an interview room and read him his *Miranda* rights. At that time, the deputy advised defendant, inter alia, that he had the right to remain silent and the right to have an attorney appointed for him and to have the attorney present during questioning. Defendant waived his *Miranda* rights.

By advising defendant of his *Miranda* rights, and by obtaining a knowing and voluntary waiver of the same, Deputy Davis lawfully clarified the ambiguous request for counsel that defendant had made at the disciplinary hearing. This was lawful and did not violate the rule of *Edwards, supra,* 451 U.S. 477 [68 L.Ed.2d 378]. (*People v. Simons, supra,* 155 Cal.App.4th at p. 958.)

Viewing this case from a distance, as one might look at it from a satellite, we are confident that our result is just. There is simply no objectionable police conduct in this case. Unlike in *Edwards, supra,* 451 U.S. 477, defendant did not object to meeting with Deputy Davis on January 15. Unlike in *Edwards,* defendant was not told that he had to talk to Deputy Davis. Application of the *Edwards* rule in this case would elevate form over substance and would constitute a miscarriage of justice. We will not do it.

The trial court did not err in denying defendant's motion to suppress the statements he made to Deputy Davis.

## II

The trial court instructed the jury in the language of Judicial Council of California Criminal Jury Instructions (2008) CALCRIM No. 220 (reasonable doubt), in pertinent part as follows: "A defendant in a criminal case is presumed to be innocent. This presumption requires that the People prove the defendant guilty beyond a reasonable doubt. Whenever I tell you the People must prove something, I mean they must prove it beyond a reasonable doubt."[1]

---

[1] As given to the jury, CALCRIM No. 220 states in its entirety: "The fact that a criminal charge has been filed against the defendant is not evidence that the charge is true. You must not be bias[ed] against the defendant just because he has been arrested, charged with a crime, or brought to trial. [¶] A defendant in a criminal case is presumed to be innocent. This

Defendant claims this instruction was insufficient because it failed to inform the jury that it was required to find "each element of a crime" true beyond a reasonable doubt. We disagree.

■   Under the United States Constitution and California law, the government must prove each element of a charged offense beyond a reasonable doubt. (*Victor v. Nebraska* (1994) 511 U.S. 1, 5 [127 L.Ed.2d 583, 590, 114 S.Ct. 1239]; *People v. Cole* (2004) 33 Cal.4th 1158, 1208 [17 Cal.Rptr.3d 532, 95 P.3d 811]; § 1096.) Whether an instruction correctly conveys this standard must be determined by examining the instruction in the context of all the instructions given the jury. (*Victor v. Nebraska, supra,* 511 U.S. at p. 5; see *People v. Cain* (1995) 10 Cal.4th 1, 36 [40 Cal.Rptr.2d 481, 892 P.2d 1224].)

Under these standards, we see no instructional error. In giving CALCRIM No. 220, the trial court told the jury: "Whenever I tell you the People must prove something, I mean they must prove it beyond a reasonable doubt." The jury also received versions of CALCRIM Nos. 2745 and 2748, which define the elements of possession or manufacture of a weapon in a penal institution and possession of paraphernalia in a penal institution. Each instruction states, "To prove that the defendant is guilty of this crime, the People must prove that:" and then lists the separate elements of the offense. In addition, the jury received CALCRIM No. 361, which concerns the evaluation of a defendant's failure, if any, to explain or deny adverse evidence against him, and states: "The People must still prove each element of the crime beyond a reasonable doubt." Accordingly, CALCRIM No. 220, viewed together with other instructions, correctly informed the jury that the prosecutor was obliged to prove each element of the crimes beyond a reasonable doubt.

III*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

presumption requires that the People prove a defendant guilty beyond a reasonable doubt. Whenever I tell you the People must prove something, I mean they must prove it beyond a reasonable doubt. [¶] Proof beyond a reasonable doubt is proof that leaves you with an abiding conviction that the charge is true. The evidence need not eliminate all possible doubt because everything in life is open to some possible or imaginary doubt. [¶] In deciding whether the People have proved their case beyond a reasonable doubt, you must impartially compare and consider all the evidence that was received throughout the entire trial. Unless the evidence proves the defendant guilty beyond a reasonable doubt, he's entitled to an acquittal and you must find him not guilty."

\* See footnote, *ante,* page 1592.

## DISPOSITION

The judgment is affirmed.

Scotland, P. J., and Robie, J., concurred.

Appellant's petition for review by the Supreme Court was denied November 19, 2008, S166680.