[No. D054660. Fourth Dist., Div. One. June 14, 2010.]

THE PEOPLE, Plaintiff and Respondent, v.
SHARON SUE RILEY, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION[1]]**

---

[1] Pursuant to California Rules of Court, rule 8.1110, this opinion is certified for publication with the exception of part III.B.

COUNSEL

John Lanahan, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Lilia E. Garcia and Lynne G. McGinnis, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**AARON, J.—**

## I.

## INTRODUCTION

Defendant Sharon Sue Riley appeals from a judgment of conviction after a jury convicted her of possessing marijuana in a prison facility, in violation of Penal Code section 4573.6.[2] Riley was teaching at Calipatria State Prison when correctional officers at the prison searched her belongings and found a small coin purse that contained approximately 0.47 grams of marijuana.

On appeal, Riley contends that the trial court erred in denying her motion for judgment of acquittal and in permitting the prosecution to reopen its case to present evidence that the amount of marijuana found in the coin purse is a "usable amount." In a related argument, Riley claims that the trial court abused its discretion in allowing the prosecution to recall one of its witnesses to testify that 0.47 grams of marijuana is a usable amount. Finally, Riley contends that the trial court erred in instructing the jury with a revised version of CALCRIM No. 220, which she maintains fails to instruct the jury that the prosecution must prove each element of the offense beyond a reasonable doubt.

We conclude that Riley's claims are without merit, and affirm the judgment of the trial court.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. *Factual background*

#### 1. *The prosecution's case*

In September 2007, Riley was employed as a teacher at Calipatria State Prison. As an employee of the prison, Riley was subjected to only a cursory search of her belongings upon entering the prison. On September 26, Investigative Services Unit Officers Alvarez, Silva, and Bell entered Riley's classroom while Riley was teaching. Bell retrieved Riley's purse and her lunchbox from an unlocked cabinet in the classroom. According to Alvarez

---

[2] Further statutory references are to the Penal Code unless otherwise indicated.

and Silva, it was unusual for an employee to keep a purse unsecured in the prison.[3] Bell took the purse and lunchbox, and, together with the other officers, escorted Riley from the classroom to the employee relations office.

When they arrived at the employee relations office, Silva asked Riley whether everything in the purse and lunchbox belonged to her. Riley replied that everything did belong to her. Silva asked Riley whether she would consent to a search of her person and her belongings, and Riley gave her consent. In Riley's purse, Silva found a small black coin purse that contained marijuana. Riley told Silva that the marijuana did not belong to her.

A California Department of Justice laboratory criminalist determined that the coin purse contained 0.47 grams of marijuana. No fingerprints were recovered from the coin purse.

Riley was dismissed from her job at the prison on November 27, 2007.

2. *Defense case*

Riley testified that she did not know how the marijuana got into her purse. Riley said that she had gone to the restroom several times on the day she was arrested, and that she had left her purse in the classroom when she went to the restroom. Riley said that when prison security personnel searched her purse and found the black coin purse, she did not recognize the coin purse. When Riley tried to tell Silva that the coin purse did not belong to her, he replied, "[Y]eah, that's what they all say." Riley testified that she did not know how the coin purse got into her purse, and said that she had not brought the marijuana into the prison.

Two inmates who assisted Riley in her prison classroom testified that Riley kept her purse in an unlocked cabinet in the classroom, and that she sometimes left the purse unattended while she was working. School supplies were also kept in the unlocked cabinet where Riley kept her purse. One of the inmate assistants believed that Riley had left the cabinet unlocked on the day she was arrested so that the inmates would be able to obtain pens and other supplies from the cabinet.

Riley testified that she had had some problems in the past with a few of the inmates. She had reported one inmate to prison authorities because he had

---

[3] In the transcript, the question the prosecutor posed to Silva was whether, in his experience, it was "unusual for a female employee to leave her purse in an *secured* area." (Italics added.) Based on the context of the prosecutor's question, as well as the use of the article "an" just before the word "secured," we conclude that the prosecutor was asking Silva whether it was unusual for female employees to leave purses in an *unsecured* area, but that the court reporter erroneously typed "secured" rather than "unsecured."

made statements that frightened her and had tried to threaten or blackmail her. Riley also said that she believed her supervisor had behaved strangely on the day Riley was arrested. Riley noted that her supervisor had come into her classroom that day and sat at Riley's desk with a smile and a look of "satisfaction" on his face while she was being escorted from the room. Her supervisor's conduct led Riley to believe that her arrest had been preplanned.

### B. Procedural background

On June 20, 2008, a grand jury returned an indictment against Riley charging her with one count of willful, unlawful, and knowing possession of marijuana in a state prison (§ 4573.6). A jury convicted Riley of that charge on November 19, 2008.

On February 19, 2009, the trial court sentenced Riley to the midterm of three years, suspended execution of the sentence, and placed Riley on formal probation, which included the condition that she serve 180 days in county jail and 180 days in a residential treatment facility. Riley filed a notice of appeal that day.

### III.

### DISCUSSION

### A. The trial court did not err in denying Riley's motion for judgment of acquittal

#### 1. Additional background

Riley moved for a judgment of acquittal pursuant to section 1118.1[4] at the close of the prosecution's case-in-chief, arguing that the prosecution had failed to prove that she possessed a "usable" quantity of marijuana. Riley argued that dismissal was required because the prosecution had not offered any testimony that the 0.47 grams of marijuana constituted a usable amount. In response, the prosecutor noted that Silva had testified that the coin purse contained 0.5 grams of marijuana, and that a criminalist with the Department of Justice laboratory had testified that the coin purse contained 0.47 grams of

---

[4] Section 1118.1 provides: "In a case tried before a jury, the court on motion of the defendant or on its own motion, at the close of the evidence on either side and before the case is submitted to the jury for decision, shall order the entry of a judgment of acquittal of one or more of the offenses charged in the accusatory pleading if the evidence then before the court is insufficient to sustain a conviction of such offense or offenses on appeal. If such a motion for judgment of acquittal at the close of the evidence offered by the prosecution is not granted, the defendant may offer evidence without first having reserved that right."

marijuana. The prosecutor argued, "And Silva did talk about that being a usable amount. The coin purse—and the expert also said it was a usable amount."

Defense counsel responded, "Neither said it was a usable amount. And just merely [giving] the amount isn't enough to show [it was a] usable amount." The trial court immediately stated, "Okay. I'm going to deny the motion. And if [the prosecutor]—I'm going to deny the motion."

At the opening of court proceedings the following day, after the defense had rested, the trial court stated,

"Okay. When defense counsel brought her motion pursuant to Penal Code [s]ection 1118[.1] to dismiss, it was on the basis that there was no testimony regarding useable amount. And at the time I denied the motion based on my belief that there had been some testimony in that regard. And I believe [the prosecutor] indicated at argument that there had been as well.

"Subsequently, I checked my notes. It didn't help me one way or the other. And then I asked the court reporter to go through her notes of the expert, and for that matter, of the officers that testified. And she apparently, as reported back to me, that she checked it in a lot of different ways. She did a word search for usable[5] amount, for marijuana, and she read around the words that were involved. And she could not find any reference to testimony regarding useable amount.

"Now, that being the state of the record, that leads me then to either—I'm anticipating what each of your motions are going to be.

"[Defense counsel], we've just concluded testimony and both sides have rested. And you have a right to renew your motion under [section] 1118[.1]."

After the trial court made these remarks, Riley renewed her motion to dismiss the case pursuant to section 1118.1. The court then said, "And likewise, [prosecutor], you have a right to—at least to request that—that the—your case be reopened to allow in testimony with respect to useable amount, which I'm assuming you would make." The prosecutor said, "I would absolutely [make that] motion."

After discussing jury instructions, the court again addressed the motion to dismiss. The prosecutor stated that he believed he had asked his witness

---

[5] The court reporter used two different spellings of the word "usable"—i.e., "useable" and "usable"—in the reporter's transcript.

whether the quantity of marijuana found was a usable amount, stating, "I have it in my notes, and I have it checked off. And I have it prepared in the schematic that I presented and prepared." The prosecutor continued, "But that said, if the Court finds that it was not done for that reason, or it has not been established, then the People would simply open our rebuttal case and call Sergeant Silva, who is on his way here now."

Defense counsel then asked whether the court was "granting the 1118.1 motion," to which the court replied, "No. I'm hearing both motions at the same time." Defense counsel stated,

"Well, if the 1118.1 motion were to be granted, which I think it should be, I would object to the People being allowed to reopen their case. And I would object to them being allowed to call a witness on rebuttal to testify to something that was not offered as evidence from the defense in the defense's case in chief.

"We never talked about whether or not the amount was a usable amount. In fact, we never even brought up the amount.

"I think the only time that an 1118.1 motion that would have been granted would then—the only time that the People are allowed to reopen after an 1118.1 motion has been granted would be in only the most extreme and severe situations, which isn't what we have here.

"I know a recent case out of Los Angeles County, a time when the People were allowed to reopen was a case where the facts w[ere] entirely different than this. And it was a case where there were multiple charges against—multiple counts against the defendant. The People didn't have a witness available to prove one of the charges. The case—the charge was then dismissed as a result of that at [the] request of the defense under a[] 1118.1 motion at the close of the People's evidence.

"Then during the defense's case-in-chief, they called that missing witness as their own witness. And the Court said then that the People would be allowed to reopen for [the] purpose of proving that element when the defense was essentially hiding their witness from them. So I think that's the recent case out of—I believe it's Los Angeles County and the Court of Appeal[] had said that that would be the only time that the People would be allowed to reopen their case.

"If the People are allowed to call Sergeant Silva for rebuttal evidence, fine. But I don't think that it's relevant. And I would object. And I think it's

outside the scope of—or of the defense's case to ask questions about whether or not it was a usable amount."

The prosecutor argued that asking Silva whether the quantity of marijuana found was a usable amount was "legitimate rebuttal evidence."

The court concluded, "Okay. I'm going to treat this, on the People's part, as an inadvertent omission of evidence. And I'm certainly going to find there was no surprise to the defendant on the issue. [¶] The defendant['s] . . . list[] of witnesses actually had no expert witness cited whatsoever [who] would have established that this marijuana was not a useable amount. This is really not a serious issue. This is a—"

Defense counsel interjected,

"But to say that .47 grams is . . . a useable amount, that's a huge issue. Half of a—less than half of a gram? It doesn't even measure on a normal, like, scale. Like that's such a tiny, tiny, tiny, tiny amount that just the allegation that it's .47 grams or .05 grams, whatever the jury chooses to believe, there's such a small amount, that it—I think it does require some evidence. It's not like it's a pound.

"And so I would just beg to differ with the Court in saying that that is not an issue. And I wouldn't even be able to bring an expert to say that it's not a usable amount when they haven't even brought up the issue as to whether or not it is a usable amount. I can't rebut things that haven't been established."

The prosecutor responded,

"I'm entitled to rebuttal. And the rebuttal is essentially under the—like I just mentioned, [Y]our Honor. Now we're going in circles here. It was—she claimed that when the marijuana was pulled out of the bag, the .5 grams, .47 as established by the expert, she never saw the marijuana. She objected to the coin purse, and she stated she never saw the marijuana.

"Well, I have rebuttal evidence that clearly speaks to that. And part of that rebuttal is, well, how much was it? Was it an amount that could be seen? Was it loose-leaf open? Was it pulled out? Where [was it] placed? That was never established. And that is legitimate rebuttal testimony that can come in based on the defendant's assertion that she took [on] the stand."

At this point in the proceedings, the court stated:

"I'm making my ruling. And my ruling is that I'm going to deny the 1118.1 [motion] and in effect to allow the defendant—or excuse me—to allow the prosecution to reopen their case and establish the issue of useable amount.

"And with all due respect, this is my observation, [defense counsel]. I don't feel that this was an issue that was seriously an issue. It wasn't addressed certainly in any of our pretrial discussions or during trial. There was no expert designated by your side that would put that issue into dispute. If there was, you should have designated it. And there wasn't. And yet the prosecution did have a designated expert.

"And, in addition, this does not come as a surprise to the defendant because the defense already knew the amount of—or the weight of the marijuana that was discovered in the purse and certainly knew that that was an issue before the Court, before the jury, before the trial even commenced.

"So with that being stated, I will permit the prosecution to reopen their case, whether as rebuttal evidence or as a reopening. I'll do it on an alternative basis. Either way. I still think that there's a valid basis to—under these circumstances to bring it in.

"If this was a new theory of the case, if this was some surprise to the defense, and you didn't have the opportunity to prepare a response to it, now that would be one thing, and I would certainly give that serious consideration. But I haven't seen—I am persuaded by the fact that this wasn't placed as an issue. This is what I would call an oops on the part of the prosecution. They should have put it in. They didn't. I'll allow them to reopen to establish that.

"They already have the grams. They already have testimony in effect that it's not a trace amount. So it's really not much more evidence that we're talking about. And that is my ruling."

### 2. *Applicable law*

■ In order to establish the offense of possession of a controlled substance pursuant to Health and Safety Code section 11377, subdivision (a), the prosecution must prove that the quantity of a controlled substance possessed by the defendant was " 'usable for consumption or sale.' " (*People v. Palaschak* (1995) 9 Cal.4th 1236, 1242 [40 Cal.Rptr.2d 722, 893 P.2d 717].)

Section 1093 sets forth the typical order of proceedings in a jury trial. Section 1093 provides in pertinent part:

"The jury having been impaneled and sworn, unless waived, the trial shall proceed in the following order, unless otherwise directed by the court: [¶] . . . [¶]

"(b) The district attorney, or other counsel for the people, may make an opening statement in support of the charge. Whether or not the district

attorney, or other counsel for the people, makes an opening statement, the defendant or his or her counsel may then make an opening statement, or may reserve the making of an opening statement until after introduction of the evidence in support of the charge.

"(c) The district attorney, or other counsel for the people shall then offer the evidence in support of the charge. The defendant or his or her counsel may then offer his or her evidence in support of the defense.

"(d) The parties may then respectively offer rebutting testimony only, *unless the court, for good reason, in furtherance of justice, permit[s] them to offer evidence upon their original case.*

"(e) When the evidence is concluded, unless the case is submitted on either side, or on both sides, without argument, the district attorney, or other counsel for the people, and counsel for the defendant, may argue the case to the court and jury; the district attorney, or other counsel for the people, opening the argument and having the right to close." (Italics added.)

■ Section 1093 clearly accords the trial court discretion to allow the parties to "offer evidence upon their original case" when the court does so "for good reason" and "in furtherance of justice." Section 1094 also expressly gives the trial court discretion to depart from the order of proceedings outlined in section 1093: "When the state of the pleadings requires it, or in any other case, for good reasons, and in the sound discretion of the court, the order prescribed in Section 1093 may be departed from."

Courts have interpreted sections 1093 and 1094 as giving a trial court "broad discretion to order a case reopened and allow the introduction of additional evidence [citations]." (*People v. Goss* (1992) 7 Cal.App.4th 702, 706 [9 Cal.Rptr.2d 412] (*Goss*).) "No error results from granting a request to reopen in the absence of a showing of abuse. [Citation.]" (*People v. Rodriguez* (1984) 152 Cal.App.3d 289, 295 [199 Cal.Rptr. 433] (*Rodriguez*).)

"Factors to be considered in reviewing the exercise of [the trial court's] discretion include the stage the proceedings had reached when the motion was made, the diligence shown by the moving party in discovering the new evidence, the prospect that the jury would accord it undue emphasis, and the significance of the evidence.' [Citation.]" (*Rodriguez, supra,* 152 Cal.App.3d at p. 295, italics omitted.) "The court always has discretion to allow the prosecution to reopen after a section 1118 motion so long as the court is convinced that the failure to present evidence on the issue was a result of 'inadvertence or mistake on the part of the prosecutor and not from an

attempt to gain a tactical advantage over [the defendant].' [Citation.]" (*Goss, supra*, 7 Cal.App.4th at p. 708.)[6]

### 3. *Analysis*

It is clear that the trial court was convinced that the prosecutor's failure to present evidence on the question whether the 0.47 grams of marijuana found in Riley's purse was a usable amount was the result of inadvertence. The record supports the trial court's conclusion, since there is nothing to suggest that the prosecutor failed to present this evidence in its case-in-chief in an attempt to gain an advantage, or because the prosecutor could not have presented the evidence earlier. The prosecutor had presented evidence as to the quantity of marijuana found in the black coin purse. In addition, during the prosecution's case-in-chief, the prosecutor asked Silva foundational questions regarding his training and experience with marijuana in his role as a correctional officer in a state prison. It is clear that in posing these questions, the prosecutor was leading to the issue of whether the quantity of marijuana found in the coin purse was a "usable amount." The prosecutor moved to reopen the prosecution's case immediately upon realizing that he had inadvertently failed to ask an expert whether the quantity of drugs found in the coin purse was a usable amount.

This is not a case in which the trial court gave the prosecution the opportunity to obtain additional, necessary evidence and then permitted the prosecution to reopen its case to present that evidence. In addition, the presentation of this evidence was not a surprise to the defense. The prosecutor clearly intended to present evidence that the quantity of marijuana found in Riley's belongings was more than simply a trace amount, and had offered evidence of the precise weight of the marijuana, which went to the question whether Riley possessed a usable amount of the drug.

Riley contends that this case is distinguishable from the cases that the People cite in support of the People's argument that the trial court has discretion to allow the prosecution to reopen its case after the prosecution has rested, and after the defendant has moved for a judgment of acquittal. Riley points out that *People v. Jones* (2003) 30 Cal.4th 1084 [135 Cal.Rptr.2d 370, 70 P.3d 359], *People v. Funes* (1994) 23 Cal.App.4th 1506 [28 Cal.Rptr.2d

---

[6] *Goss* involves a motion under section 1118, which provides the mechanism by which a defendant may move for acquittal in a case in which the defendant has waived a jury trial. In this case, Riley moved for acquittal under section 1118.1, the provision that applies to cases tried before a jury. We see no reason to distinguish between motions for acquittal made pursuant to section 1118 and motions for acquittal made pursuant to section 1118.1 for purposes of considering a trial court's discretion to allow the prosecution to reopen its case after a motion for acquittal has been made.

758], and *People v. Cuccia* (2002) 97 Cal.App.4th 785 [118 Cal.Rptr.2d 668], all involved the trial court's discretion to permit the *defense* to reopen its case. According to Riley, because the prosecution bears the constitutional burden to prove each element of an offense beyond a reasonable doubt, it should not be given "a second bite at the apple once a motion for judgment of acquittal has been made."

Riley also distinguishes this case from other cases in which courts have permitted the prosecution to reopen its case. For example, Riley notes that *Rodriguez, supra,* 152 Cal.App.3d 289 and *Goss, supra,* 7 Cal.App.4th 702, each involved a situation in which the prosecution was allowed to reopen its case, after a court trial in which the court had found the defendant guilty, in order to prove the existence of a prior conviction for purposes of a sentence enhancement—not to prove an element of the substantive offense. Riley contends that under United States Supreme Court precedent, the prosecution's burden of proof is different with respect to sentencing factors than it is with respect to elements of the substantive offense. According to Riley, the court should look at the prosecution's evidence at the time the motion for judgment of acquittal is made, and if, at that point in time, the evidence is insufficient to prove each *element* of the offense, the prosecution should not be given an opportunity to reopen its case-in-chief to present such evidence. To do otherwise, she contends, would violate both her "right to have the prosecution prove each element of the offense beyond a reasonable doubt [citations] and the prohibition against double jeopardy where the motion for judgment of acquittal has been granted."

■ We have not found a published case in which a trial court exercised its discretion to allow the prosecution to reopen its case—after the defendant has moved for judgment of acquittal under section 1118.1—to present evidence that was inadvertently omitted and that goes to an element of the offense. Nevertheless, we conclude that section 1118.1 does not place a limitation on the trial court's discretion under sections 1093 and 1094 to permit either party to reopen its case for good cause and when justice so requires. The purpose of section 1118.1 is to provide a procedure by which a defendant may promptly terminate a fatally deficient prosecution, not to provide the defendant with a tactical trap when the prosecution inadvertently fails to present evidence in its possession. In a situation such as this, where the prosecutor simply made a mistake and failed to present evidence that the prosecution had in its possession, the fact that the defendant moved for judgment of acquittal pursuant to section 1118.1 should not categorically prohibit the trial court from exercising the discretion granted to it under sections 1093 and 1094.

■ We conclude that under the circumstances presented, the trial court did not abuse its discretion in allowing the prosecution to reopen its case to present evidence that the quantity of marijuana found in the coin purse was a usable amount.[7]

B. *The trial court did not err in allowing the prosecutor to recall Officer Silva to testify as an expert on the issue whether the quantity of marijuana found in the coin purse was a "usable amount"*[*]

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

C. *The trial court did not err in giving the revised version of CALCRIM No. 220*

Riley maintains that the trial court erred when it failed to instruct the jury that in order to convict, it must find every element of the charged offense or special allegation true beyond a reasonable doubt. Specifically, Riley claims that reversal is required because the revised version of CALCRIM No. 220 that the trial court gave omits language from the previous version of CALCRIM No. 220, to the effect that the People must prove "each element" of the crime beyond a reasonable doubt.

### 1. *Relevant Law*

Appellate courts determine de novo whether a jury instruction correctly states the law. (*People v. Posey* (2004) 32 Cal.4th 193, 218 [8 Cal.Rptr.3d 551, 82 P.3d 755].) "Review of the adequacy of instructions is based on whether the trial court 'fully and fairly instructed on the applicable law.' [Citation.]" (*People v. Ramos* (2008) 163 Cal.App.4th 1082, 1088 [78 Cal.Rptr.3d 186] (*Ramos*).) " ' "In determining whether error has been committed in giving or not giving jury instructions, we must consider the instructions as a whole . . . [and] assume that the jurors are intelligent persons and capable of understanding and correlating all jury instructions which are given." [Citation.]' [Citation.]" (*Ibid.*) " 'Instructions should be interpreted, if possible, so as to support the judgment rather than defeat it if they are reasonably susceptible to such interpretation.' [Citation.]" (*Ibid.*)

■ "Under the United States Constitution and California law, the government must prove each element of a charged offense beyond a reasonable

---

[7] The evidence that the trial court allowed the prosecutor to present after the defense had rested was not properly admissible as rebuttal evidence. Rather, it is evidence that the prosecutor should have presented during the prosecution's case-in-chief, but through inadvertence, did not. For the reasons set forth in the text, we conclude that the trial court properly allowed the prosecution to reopen its case pursuant to section 1094 to present this additional evidence, despite the fact that the evidence did not rebut defense evidence.

[*]See footnote, *ante*, page 754.

doubt. [Citations.]" (*People v. Wyatt* (2008) 165 Cal.App.4th 1592, 1601 [81 Cal.Rptr.3d 911] (*Wyatt*).) "Whether an instruction correctly conveys this standard must be determined by examining the instruction in the context of all the instructions given the jury. [Citations.]" (*Ibid.*)

2. *Analysis*

The trial court instructed the jury with CALCRIM No. 220 as follows:

"The fact that a criminal charge has been filed against the defendant[s] is not evidence that the charge is true. You must not be biased against the defendant just because she has been arrested, charged with a crime, or brought to trial.

"A defendant in a criminal case is presumed to be innocent. This presumption requires that the People prove a defendant guilty beyond a reasonable doubt. Whenever I tell you the People must prove something, I mean they must prove it beyond a reasonable doubt.

"Proof beyond a reasonable doubt is proof that leaves you with an abiding conviction that the charge is true. The evidence need not eliminate all possible doubt because everything in life is open to some possible or imaginary doubt.

"In deciding whether the People have proved their case beyond a reasonable doubt, you must impartially compare and consider all the evidence that was received throughout the entire trial. Unless the evidence proves the defendant guilty beyond a reasonable doubt, she is entitled to an acquittal and you must find her not guilty."[8]

Construed in the context of the instructions as a whole, CALCRIM No. 220 adequately explains the applicable law. CALCRIM No. 220 expressly instructs that, "Whenever [the court] tell[s] you the People must prove something, [the court] mean[s] they must prove it beyond a reasonable doubt." The court also instructed the jury on the elements of possession of a controlled substance in a penal institution, stating, "To prove that the defendant is guilty of this crime, the People must prove that: [¶] 1. The defendant possessed a controlled substance in a penal institution; [¶] 2. The defendant knew of the substance's presence; [¶] [AND] [¶] 3. The defendant knew of the substance's nature or character as a controlled substance; [¶] 4. The controlled substance that the defendant possessed was marijuana; [¶] [AND] [¶] 5. The

---

[8] The second line of the second paragraph of CALCRIM former No. 220 stated: "This presumption requires that the People prove each element of a crime [and special allegation] beyond a reasonable doubt." (CALCRIM No. 220, prior to Aug. 2006 revision.)

controlled substance was a usable amount." Thus, the instructions as a whole informed the jury that the People had to prove each element of the offense, and also told the jury that whenever the court instructed that the People had to prove something, this meant that the People had to prove it beyond a reasonable doubt. The court in *Ramos, supra*, 163 Cal.App.4th at page 1089, concluded that similar instructions (i.e., the current version of CALCRIM No. 220, in combination with the court's statement that the People must prove each of the elements of the specific offenses) "adequately informed the jury that the prosecution was required to prove each element of the charged crime beyond a reasonable doubt." We conclude that as in *Ramos*, the instructions, as a whole, were sufficient to inform the jury that the prosecution had the obligation to prove each element beyond a reasonable doubt.

Riley contends that two cases on which the People rely for the proposition that CALCRIM No. 220 is adequate despite the omission of the "each element" or "every element" language—i.e., *People v. Henning* (2009) 178 Cal.App.4th 388 [100 Cal.Rptr.3d 419] (*Henning*) and *Wyatt, supra*, 165 Cal.App.4th 1592—are not sufficiently analogous to her case. Riley notes that in those cases, in addition to instructing with CALCRIM No. 220, the trial courts also instructed with CALCRIM No. 361, " 'which concerns the evaluation of a defendant's failure, if any, to explain or deny adverse evidence against him, and states: "The People must still prove each element of the crime beyond a reasonable doubt." . . .' [Citation.]" (*Henning, supra*, 178 Cal.App.4th at p. 406; see also *Wyatt, supra*, 165 Cal.App.4th at p. 1601.) Riley complains that the trial court gave no similar instruction here, implying that the lack of such an instruction means that the jury in this case was not sufficiently informed that the prosecutor was obligated to prove each element of the crime charged beyond a reasonable doubt. We reject this contention.

First, at least one other court has concluded that CALCRIM No. 220 is adequate, even in the absence of CALCRIM No. 361. (See *Ramos, supra*, 163 Cal.App.4th at p. 1089.) Further, it is clear that the *Wyatt* and *Henning* courts did not base their conclusions that CALCRIM No. 220 provided an adequate instruction solely on the fact that the trial courts in those cases instructed the juries with CALCRIM No. 361. Although the *Wyatt* and *Henning* courts noted that the trial courts had included CALCRIM No. 361 in the instructions, the courts indicated that the fact that this instruction was given was an *additional* reason why they concluded that the juries had not been misled into believing that they did not have to find the existence of each element of an offense beyond a reasonable doubt.

█ We do not view the giving of CALCRIM No. 361 as necessary to ensure that the jury understands that the prosecutor must prove each element

of a crime beyond a reasonable doubt. The CALCRIM No. 220 instruction—which informs the jury that when the court says that the People must prove something, the People must prove it beyond a reasonable doubt, combined with the court's instruction that the People must prove each element of the offense (which is given whenever the court instructs on the elements of an offense), adequately informs the jury that it must find that each element has been proved beyond a reasonable doubt.

We conclude that CALCRIM No. 220, viewed together with the instruction on the offense of possession of a controlled substance in a penal institution, correctly informed the jury that the prosecutor bore the burden of proving each element of the crime beyond a reasonable doubt.

## IV.

## DISPOSITION

The judgment is affirmed.

Benke, Acting P. J., and McDonald, J., concurred.

Appellant's petition for review by the Supreme Court was denied September 29, 2010, S184867.