Filed 7/18/13  P. v. Flores CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>CARLOS ENRIQUE FLORES,<br><br>    Defendant and Appellant. | B243923<br><br>(Los Angeles County<br>Super. Ct. No. BA385567) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Henry J. Hall, Judge.  Modified and, as so modified, affirmed.

Kevin D. Sheehy, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Victoria B. Wilson and Noah P. Hill, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant and appellant Carlos Enrique Flores appeals his convictions for second degree robbery, attempted second degree robbery, misdemeanor vandalism, receiving stolen property, and auto burglary. The trial court sentenced Flores to a term of four years eight months in prison. Flores contends (1) the trial court prejudicially erred by giving the standard jury instruction regarding flight after a crime; and (2) he should have been sentenced to a jail term, not a prison term, for the misdemeanor vandalism offense. Flores's second contention has merit, and we order his sentence modified accordingly. In all other respects, we affirm.

FACTUAL AND PROCEDURAL BACKGROUND

1. *Facts.*

On June 9, 2011, Flores and three accomplices went on an early morning crime spree. The evidence relevant to the issues presented on appeal established the following.

a. *Vandalism and burglary in the parking structure.*

On June 9, 2011, at approximately 3:38 a.m., Flores drove Alex Iraheta, Luis Mesa (known as "Beso") and Josue B. (known as "Framer") in a black Lexus to the top level of a parking structure located near Kenmore Avenue and Sixth Street in Los Angeles. The group spray painted graffiti on the parking structure walls and on vehicles. They also shattered the windows of at least seven vehicles and took property from at least three of them, including, among other things, a navigation system, and two pellet guns along with a magazine and ammunition.

b. *Attempted robbery of Nelson C.*

Shortly before 7:00 o'clock that morning, Flores was driving his cohorts through Los Angeles when Iraheta and Framer suggested that they rob someone. Fifteen-year-old Nelson C. was walking to school near the intersection of Washington Boulevard and Magnolia Avenue, wearing headphones and listening to his iPod. Flores stopped the car near Nelson, and Iraheta and Framer exited the car and approached him. Flores made a U-turn and moved the car near Iraheta and Framer. Iraheta told Nelson to empty his pockets. Iraheta activated a taser he was holding, causing it to buzz and emit electrical current. Nelson ran and screamed for help. Iraheta and Framer chased him. They

2

stopped following him once he neared some bystanders. Nelson ran toward his home, and reported the incident to a police officer he happened to see on the way.

c. *Robbery of Oswaldo O.*

Moments later, Iraheta and Framer approached 16-year-old Oswaldo O. from behind as he was walking to school in the same area. The men stood in front of Oswaldo and demanded that he give them " 'everything you have.' " Iraheta activated the taser gun repeatedly. Framer took Oswaldo's cellular telephone and wallet, and tore a gold chain from his neck. The men told Oswaldo, " 'you didn't see anything,' " and ran off. Oswaldo returned to his residence and telephoned police.

d. *Robbery of Christopher C.*

After robbing Oswaldo, Iraheta and Framer returned to Flores's car and the group continued to drive around. At approximately 7:25 a.m., they approached the intersection of Catalina Street and Jefferson Boulevard, where16-year-old Christopher C. was riding his bicycle to school. Flores stopped the car, allowing Iraheta and Framer to exit. They approached Christopher. Iraheta told him he was going to take the bicycle. He attempted to stun Christopher with the taser. Christopher avoided the taser, but fell off his bicycle in the process. Iraheta took Christopher's bicycle and rode away on it. He told Christopher not to follow him. Framer got back into the Lexus, and Flores drove off. Christopher used his cellular telephone to call police.

e. *Subsequent events and investigation.*

Later in the day on June 9, 2011, Flores and two of his accomplices pawned the navigation system, one of the pellet guns, and ammunition at Mr. Steve's Pawnshop in Los Angeles. Flores provided his California identification card and his thumbprint to complete the transaction. A video surveillance system inside the shop captured the transaction on film. Flores was paid $48 for the items.

Video footage from the parking structure's surveillance system showed Flores's Lexus entering the lot, and two of his accomplices approaching the structure's walls moments after exiting the car. Video footage from an electronics store located in the area of the Oswaldo O. robbery showed two men exit the Lexus and walk southbound on

3

Magnolia towards Washington.  The Lexus drove northbound a short distance, waited "a couple minutes" with its emergency lights on, and then made a U-turn and continued driving on Magnolia.

Los Angeles Police Department Detective Sergio Martinez investigated the crimes.  After obtaining the Lexus's license plate number from the video, he spoke with Flores's mother the day after the crimes, June 10, 2011.  The Lexus seen in the video was in the driveway of her residence.  A search of the Lexus revealed a taser in a storage pocket in the driver's side door.

Martinez spoke to Flores at his home on June 10, 2011, and he and other detectives conducted a recorded interviewed of Flores later that day.  A tape of the interview was played for the jury.  Flores told the detectives that on June 9, 2011, he had picked up Iraheta, Beso, and Framer from their respective homes shortly after midnight.  He drove them to the parking structure.  He admitted being present when the others vandalized the garage and broke into vehicles.  He admitted painting his name on a wall.  He admitted that later that morning, Iraheta and Framer suggested they rob someone.  He did not want to question them and decided to "let these guys do what they want to do."  He knew what they planned to do when they exited the Lexus, and he kept the engine running and waited for them while they went out to rob people.  He did not think he would "get in trouble for . . . them robbing people."  He talked them out of robbing "an old lady" who was wearing a gold chain.  He admitted that the taser was his.  He admitted pawning the navigation system.

He signed the following statement:  "We were at the parking structure on the last level and Beso, Framer and Alex vandalized the walls.  At one point they started walking down the parking structure breaking into cars.  On Washington, Framer and Alex hopped out of the car on some guy who they said took off running.  They briefly chased him but stopped and then approached another guy.  They gave me a G.P.S. system and pellet gun to pawn."

4

Nelson, Oswaldo, and Christopher separately identified Iraheta as one of the robbers in pretrial photographic lineups. All three youths identified Iraheta and Framer from still photographs extracted from the parking structure's video system. Oswaldo identified Iraheta at trial.[1]

The parking structure manager paid $300 to have the graffiti removed from the vehicles, and $200 for its removal from the walls.

The defense presented no evidence.

2. *Procedure.*

Flores and Iraheta were tried together, by different juries.[2] Flores was convicted of attempted second degree robbery (Pen. Code, §§ 664, 211);[3] two counts of second degree robbery (§ 211); misdemeanor vandalism (§ 594, subd. (a)); receiving stolen property (§ 496, subd. (a)); and two counts of second degree burglary of a vehicle (§ 459). The trial court sentenced Flores to a term of four years eight months in prison. It imposed a restitution fine, a suspended parole restitution fine, criminal conviction assessments, and court security fees, and ordered Flores to pay victim restitution. Flores appeals.

## DISCUSSION

1. *Instruction with CALCRIM No. 372 was not prejudicial error.*

The trial court asked the parties whether they wished the court to instruct with CALCRIM No. 372, regarding flight after crime. The court queried: "Do we believe that the flight instruction is appropriate or not appropriate? . . . [T]his is one of those ones that is a palliative instruction for the defense. It keeps the jury from over considering the fact that the defendants left the scene of the crime." The People argued that the instruction was warranted, and requested it be given. Both defense counsel objected.

---

[1]     Christopher did not identify Iraheta at trial and repudiated his pretrial identification of him.

[2]     Iraheta is not a party to this appeal.

[3]     All further undesignated statutory references are to the Penal Code.

The trial court overruled the objections and instructed as follows: "If the defendant fled immediately after the crime was committed, that conduct may show that he was aware of his guilt. If you conclude that the defendant fled, it is up to you to decide the meaning and importance of that conduct. However, evidence that the defendant fled cannot prove guilt by itself." Flores contends use of the instruction was error, because there was no substantial evidence of his flight after the crimes.

A trial court must instruct, sua sponte, on the general principles of law that are closely and openly connected to the facts before the court and that are necessary for the jury's understanding of the case. (*People v. Moye* (2009) 47 Cal.4th 537, 548.) A trial court errs by giving an instruction that, while correctly stating the law, has no application to the facts of the case. (*People v. Hamilton* (2009) 45 Cal.4th 863, 937; *People v. Cross* (2008) 45 Cal.4th 58, 67.) We independently determine whether jury instructions given were correct and adequate. (*People v. Riley* (2010) 185 Cal.App.4th 754, 767; *People v. Mathson* (2012) 210 Cal.App.4th 1297, 1311.)

Whenever the prosecution relies upon evidence of flight as tending to show guilt, the trial court is statutorily required to instruct the jury with the principles embodied in CALCRIM No. 372. (§ 1127c; *People v. Wallace* (2008) 44 Cal.4th 1032, 1073-1074; *People v. Richardson* (2008) 43 Cal.4th 959, 1020; *People v. Howard* (2008) 42 Cal.4th 1000, 1020.) A flight instruction is properly given if the jury could reasonably infer that the defendant departed the crime scene under circumstances suggesting his movement was motivated by a consciousness of guilt. (*Howard*, at p. 1020; *People v. McWhorter* (2009) 47 Cal.4th 318, 376; *People v. Bradford* (1997) 14 Cal.4th 1005, 1055; *People v. Visciotti* (1992) 2 Cal.4th 1, 60.) " ' "[F]light requires neither the physical act of running nor the reaching of a far-away haven. [Citation.] Flight manifestly does require, however, a purpose to avoid being observed or arrested." ' [Citations.] '*Mere* return to familiar environs from the scene of an alleged crime does not warrant an inference of consciousness of guilt [citations], but the *circumstances* of departure from the crime scene may sometimes do so.' [Citation.]" (*Bradford*, at p. 1055; *People v. Avila* (2009) 46 Cal.4th 680, 710; *Wallace*, at p. 1074.)

6

Flores argues the instruction was improper because there was no substantial evidence of flight. In his view, no evidence showed he acted with a purpose to avoid being observed or arrested. He and his cohorts were not pursued by the victims or police; he did not leave any of the crime scenes in haste or evasively; he did nothing to avoid being observed; he did not leave town or his home; and he did not attempt to hide the Lexus, or change its appearance. His mere return to familiar environs, he posits, did not warrant the instruction. The People counter that the instruction was proper because Flores's acts of driving from the parking lot after the vandalism and burglaries, from the intersection of Washington and Magnolia following the attempted robbery of Nelson and the robbery of Oswaldo, and from the intersection of Catalina and Jefferson following the robbery of Christopher, "was evidence from which a jury could find that appellant had fled in order to avoid arrest."

In our view, the evidence of flight was weak at best, showing only that Flores left the crime scenes. "Evidence that a defendant left the scene is not alone sufficient; instead, the circumstances of departure must suggest 'a purpose to avoid being observed or arrested.' [Citations.]" (*People v. Bonilla* (2007) 41 Cal.4th 313, 328.) But any error in giving CALCRIM No. 372 was manifestly harmless because there is no probability Flores would have obtained a more favorable outcome had the trial court omitted the instruction. (*People v. Watson* (1956) 46 Cal.2d 818, 836; *People v. Silva* (1988) 45 Cal.3d 604, 628.) "The instruction did not assume that flight was established, but instead permitted the jury to make that factual determination and to decide what weight to accord it." (*People v. Carter* (2005) 36 Cal.4th 1114, 1182-1183; *People v. Visciotti, supra,* 2 Cal.4th at p. 61; see generally *People v. Richardson, supra,* 43 Cal.4th at p. 1020.) Flores's argument that the jury would reasonably have inferred "the trial evidence must have contained at least some evidence of appellant's flight" is not persuasive. The jury was instructed: "Some of these instructions may not apply, depending on your findings about the facts of the case. Do not assume just because I give a particular instruction that I am suggesting anything about the facts. After you have decided what the facts are, follow the instructions that do apply to the facts as you find

7

them." (CALCRIM No. 200.) In any event, the flight instruction's cautionary nature benefits a defendant, " 'admonishing the jury to circumspection regarding evidence that might otherwise be considered decisively inculpatory. [Citations.]' " (*People v. Boyette* (2002) 29 Cal.4th 381, 438-439; see *People v. Henderson* (2003) 110 Cal.App.4th 737, 742.)

The evidence against Flores was overwhelming. He admitted driving his cohorts in the Lexus to the parking structure, being present when they committed the vandalism and thefts, and painting his name on the wall. He admitted being the driver during the robberies and attempted robbery, all the while knowing his cohorts planned to commit robberies. That Flores did this not just once, but three times, effectively negated any argument that he lacked the requisite intent. Also damning was his admission that he owned the taser used in the robberies. After the crimes, he pawned some of the stolen property. Under these circumstances, his defense that he was simply in the car and did not specifically intend to rob anyone or assist the perpetrators in the crimes, was farfetched. It is clear the jury would not have rendered a more favorable verdict for Flores had the instruction been omitted. Contrary to Flores's assertion, the fact the jury deliberated for three hours does not suggest the case was close: the jury had before it seven counts to consider. There was no prejudicial error.

2. *Sentence on the misdemeanor vandalism count.*

Flores was convicted in count 4 of misdemeanor vandalism. The trial court did not orally state what sentence it was imposing on count 4. The court's minute order and the abstract of judgment, however, indicate the court imposed a two-year prison term, stayed pursuant to section 654.

Flores contends this was error. The vandalism statute, section 594, subdivision (b)(2)(A), provides that a misdemeanor violation of section 594 is "punishable by imprisonment in a county jail not exceeding one year." Flores therefore requests that the sentence on count 4 be modified to reflect a stayed, one-year jail term.

The People concede that the prison term was improperly imposed. However, they urge that section 654 is inapplicable because Flores was not convicted of any other

8

offenses relating to the vandalism. They request that the sentence be modified to reflect a concurrent one-year county jail sentence, rather than a stayed sentence. In his reply brief, Flores does not contest the People's position.

We agree that in light of section 594, subdivision (b)(2)(A), Flores's sentence on count 4 must be modified to a one-year county jail term. We also agree with the People that section 654 is inapplicable. Section 654, subdivision (a), provides in pertinent part: "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision." Section 654 bars multiple punishment for separate offenses arising out of a single occurrence where all of the offenses were incident to one objective. (*People v. McKinzie* (2012) 54 Cal.4th 1302, 1368; *People v. Latimer* (1993) 5 Cal.4th 1203, 1208; *People v. Calderon* (2013) 214 Cal.App.4th 656, 661.) Here, it is beyond dispute that the vandalism in the parking lot involved different acts, and was undertaken with a different intent and objective, than the subsequent offenses. Therefore, we order the judgment modified as the People suggest.

## DISPOSITION

The judgment is modified to reflect that the correct sentence on count 4 is a concurrent, one-year term in county jail.  The clerk of the superior court shall prepare and forward to the Department of Corrections and Rehabilitation an amended abstract of judgment reflecting this modification.  In all other respects, the judgment is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

ALDRICH, J.

We concur:

CROSKEY, Acting P.J.

KITCHING, J.

10