Filed 6/29/15  P. v. Parra CA2/5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE, | B253225 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. A702799) |
| v. | |
| RAYMOND JESS PARRA, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Daniel B. Feldstern, Judge.  Affirmed as modified.

Mark Yanis, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Steven D. Matthews, Supervising Deputy Attorney General, Blythe J. Leszkay, Deputy Attorney General, for Plaintiff and Respondent.

_____

The jury convicted defendant and appellant Raymond Jess Parra in count 1 of conspiracy to commit kidnapping and assault with a firearm (Pen. Code, § 182),[1] first degree murder in count 2 (§ 187), kidnapping in count 3 (§ 207, subd. (a)), conspiracy to commit murder in count 5 (§ 182), and assault with a firearm in count 6 (§ 245, subd. (a)(2)).[2] The jury found true the special allegation that defendant committed the murder while engaged in the crime of kidnapping. As to all counts the jury found true that defendant personally used a firearm (§ 12022.5), and a principal was armed with a firearm (§ 12022, subd. (a)(1)).

The trial court sentenced defendant for the murder in count 2 to life in prison without parole, plus a two-year enhancement pursuant to section 12022.5, and a one-year enhancement pursuant to section 12022, subdivision (a)(1), with the latter enhancement stayed under section 654. It imposed and stayed the following sentences as to the remaining counts: the upper term of eight years in each of counts 1 and 3 (§§ 182 & 207, subd. (a), respectively), 25-years-to-life in count 5 (§ 182), and the upper term of four years in count 6 (§ 245, subd. (a)(2)). As to each of counts 1, 3, 5, and 6, it imposed and stayed a two-year enhancement pursuant to section 12022.5, plus a one-year enhancement pursuant to section 12022, subdivision (a)(1).

Defendant contends on appeal as follows: (1) he was convicted of first degree murder on an invalid theory of culpability; (2) the court failed to instruct the jury that it must find the murder was committed to advance the kidnapping; (3) the court failed to instruct the jury that it must find the prosecution proved each element of the charged offenses beyond a reasonable doubt; and (4) the court improperly imposed a parole revocation fee.

The Attorney General concedes, and we agree, that the parole revocation fee was unauthorized and must be stricken. Additionally, our review of the record disclosed that the abstract of judgment did not conform to the oral pronouncement of judgment. After

---

[1] All statutory references are to the Penal Code, unless otherwise stated.

[2] The trial court dismissed count 4.

2

reviewing the parties' supplemental briefing on this issue, we conclude that the abstract of judgment must be corrected to properly reflect the trial court's oral pronouncement.

We affirm the judgment as modified.

# FACTS[3]

Defendant and five other members of the San Fer gang abducted and killed Ruben Cruz on Halloween night in 1984.

## *Co-participant Testimony*

Jesus Robles and Robert Ontiveros testified against defendant at trial. On the night of Cruz's murder, defendant led Robles, Ontiveros, brothers Benny and Michael L., and Ronnie Luna, into rival Pacoima gang territory, looking for a fight. They drove into Pacoima in Ontiveros's primer red Chevy Luv pickup truck, which had a camper shell covering the back.

They stopped at an AM/PM store, where defendant approached Sol Trece gang members and displayed a handgun. One of the gang members testified that defendant asked them if they were from Pacoima. They said they were not, and defendant responded that was a good thing. He showed them a black revolver, which was tucked into his waistband.

While this was happening, Benny, Michael, and Luna approached Cruz, who defendant had told them was from Pacoima. Cruz ran. They chased him on foot, and Ontiveros followed in the truck. They caught Cruz, threw him into the back of the truck, and went back to the AM/PM.

Defendant and Benny rode in the front of the truck with Ontiveros. Michael, Luna, and Robles were in the back with Cruz. They kicked him, burned him with

---

[3] Defendant did not present witnesses or evidence in his defense.

cigarettes, and threatened to "teach him a lesson." Defendant told Ontiveros to drive toward Sylmar. He said they were going to let Cruz go. Defendant told Ontiveros to stop at the intersection of Interstate 5 and Old San Fernando Road. Defendant and Benny, who was 15 years old at the time, got Cruz out of the back of the truck and led him into a canyon off the side of the road. Ten minutes later they returned alone. Benny said that he shot Cruz. They all went to defendant's house. Defendant told the other gang members not to say anything to anyone.

About three days later, defendant, Ontiveros, and Benny returned to the canyon because defendant wanted to bury the body. Cruz was naked. Defendant had ordered him to strip before he was killed. Defendant and Benny burned Cruz's clothes sometime between the murder and the burial. Ontiveros helped defendant cover the body with dirt while Benny waited in the truck. A few days later, defendant told Ontiveros to pick him up. The two went to Ontiveros's house and used a torch to melt down the gun. They hid the camper shell at the house of one of defendant's relatives.

### *Additional Testimony*

Cruz's sister, Priscilla, and her boyfriend, Edward Shirley, witnessed part of the attack. Cruz had been at Shirley's apartment with his sister earlier that night. Shirley heard fighting outside and looked out the window. He saw three men kicking and hitting someone on the ground, and another man pointing a gun at the group. One of the men said, "Put him in the truck." Shirley recognized the person being assaulted as Cruz. Cruz was trying to fight back and get away, but the group dragged him toward the truck. It was primer red and had a camper on the back. The man with the gun was holding it to Cruz's head as the others dragged Cruz toward the back of the vehicle.

Shirley awakened Cruz's sister. They saw Cruz get away from the group and run. Priscilla saw four or five men chasing her brother. Shirley saw two men chasing Cruz on foot with the truck following behind them. Priscilla went downstairs and saw the men at the AM/PM standing around the primer red truck with a camper shell. She recognized

4

Benny. She recognized another group of men, so she asked them if they had seen Cruz. They responded that they had not. The group belonged to the Sun Valley or Sol Trece gang. Shirley was also a Sol Trece member. The two groups argued. Priscilla saw one of the men around the truck lift up his shirt to display a gun in his waistband. After that, both groups left. Priscilla continued to look for her brother. At some point someone called the police.

### The Investigation

Police arrested Ontiveros about two weeks after the murder. They questioned him about his truck, which no longer had the camper shell on it. Ontiveros initially lied about the location of the camper shell and his participation in the crimes, but later told the truth. Ontiveros pled guilty to conspiring to abduct and murder Cruz, and agreed to testify against the others in exchange for leniency.

Officers interviewed Benny and Michael, who led them to the area where Cruz's body was located. Cruz was buried in a shallow grave. He had been shot twice, on the right side of his neck just below the ear, and on the left side of his neck just below the ear. Cruz's body had wounds consistent with cigarette burns on his neck and chest.

Robles was arrested and prosecuted soon after the murder. Ontiveros testified against Robles, who was convicted.

Police were unable to locate defendant until June 1, 2012, when he provided false identification during a traffic stop, and his real identity was ascertained through fingerprinting. Defendant was wearing a hat with "SF" written on it when he was stopped, and admitted to being a San Fer member.

**DISCUSSION**

*First Degree Murder Conviction*

Defendant first contends that he was convicted of first degree murder on an invalid theory of culpability, in violation of his state and federal due process rights. Defendant maintains the trial court erroneously instructed the jury that it could convict him of first degree murder on a felony murder theory if it found that the murder occurred in the course of the kidnapping. He argues that in 1984, when the murder occurred, kidnapping was not a predicate felony for felony murder, and therefore was not a valid basis for a first degree murder conviction. We agree that the instruction was given in error; however, because we can discern from its verdict that the jury necessarily found defendant committed the murder with premeditation and deliberation, reversal is not appropriate.

"'[I]n a prosecution for first degree murder it is not necessary that all jurors agree on one or more of several theories proposed by the prosecution; it is sufficient that each juror is convinced beyond a reasonable doubt that the defendant is guilty of first degree murder as that offense is defined by statute.' (*People v. Milan* (1973) 9 Cal.3d 185, 195.)" (*People v. Guerra* (1985) 40 Cal.3d 377, 386; accord, *People v. Moore* (2011) 51 Cal.4th 386, 413; *People v. Millwee* (1998) 18 Cal.4th 96, 160.) Here, the trial court instructed the jury that it could find defendant guilty of first degree murder on either of two theories: (1) willful, deliberate, premeditated murder; or (2) felony murder based on the predicate felony of kidnapping. The court instructed that the jury need not be unanimous as to which theory supported conviction.

Application of a statute that imposes increased punishment for a crime committed before the statute was enacted is barred by the ex post facto clauses of the state (Cal. Const., art. I, § 9) and federal (U.S. Const., art. I, § 9, cl. 3) constitutions. (*In re Paez* (1983) 148 Cal.App.3d 919, 922-923 (*Paez*), disapproved on other grounds by *In re Ramirez* (1985) 39 Cal.3d 931, 938.) At the time of Cruz's murder in 1984, section 189

6

did not include kidnapping as a predicate felony of first degree felony murder. (Former § 189 (Stats. 1982, ch. 950, § 1, p. 3440, eff. Sept. 13, 1982).) Subsequent amendments to section 189 added kidnapping as a predicate felony for felony murder. Accordingly, it was error for the trial court to instruct that defendant could be convicted of first degree felony murder with kidnapping as the underlying felony. (*Paez*, *supra*, at pp. 922-923.)

"When a trial court instructs a jury on two theories of guilt, one of which was legally correct and one legally incorrect, reversal is required unless there is a basis in the record to find that the verdict was based on a valid ground. [Citations.]" (*People v. Chiu* (2014) 59 Cal.4th 155, 167.) In such cases, error is harmless. (*Ibid*.)

"[D]ue process requires proof beyond a reasonable doubt of each element of the crime charged." (*People v. Dillon* (1983) 34 Cal.3d 441, 473.) "[T]he two kinds of first degree murder in [California] differ in a fundamental respect: in the case of deliberate and premeditated murder with malice aforethought, the defendant's state of mind with respect to the homicide is all-important and must be proved beyond a reasonable doubt; in the case of first degree felony murder it is entirely irrelevant and need not be proved at all." (*Id*. at pp. 476-477, fn. omitted.) Because defendant could not have been validly convicted under the theory of felony murder presented in this case, the verdict cannot stand unless it is apparent that the jury unanimously found defendant acted with the requisite willfulness, premeditation, and deliberation. We conclude that the verdict was supported.

Our Supreme Court has held that "[t]he mental state required for conviction of *conspiracy* to commit murder necessarily establishes premeditation and deliberation of the target offense of murder" and that "all murder conspiracies are conspiracies to commit first degree murder." (*People v. Cortez* (1998) 18 Cal.4th 1223, 1232 (*Cortez*).) Here, the jury found defendant guilty of conspiracy to commit murder. It follows that, in doing so, it unanimously found defendant had the mental state required for a conviction of first degree murder beyond a reasonable doubt.

Defendant argues that although *Cortez* held all conspiracy to commit murder is first degree murder as a matter of *law*, the high court has not yet decided the question of

7

whether a *factual* conspiracy to commit second degree murder exists. There is no merit in this argument. The *Cortez* court's holding was based on the factual reality that conspiracy to commit murder requires that "two or more persons . . . intend to agree or conspire, further intend to commit the target offense of murder, and perform one or more overt acts in furtherance of the planned murder[,] a state of mind 'functionally indistinguishable from the mental state of premeditating the target offense of murder.' [Citation.]" (*Cortez*, *supra*, 18 Cal.4th at p. 1232, quoting *People v. Swain* (1996) 12 Cal.4th 593, 608-609.) Contrary to defendant's assertions, the majority in *Cortez* did not approve dissenting Justice Kennard's statements that "[p]unishing murder conspiracies of unspecified degree as first degree murder conspiracies simply accords with the statistical reality that the vast majority of murder conspiracies will involve premeditation and deliberation." (*Cortez*, *supra*, at p. 1250 (dis. opn. of Kennard, J.).) Rather, *Cortez* unambiguously held "that the mental state required for conviction of conspiracy to commit express malice murder *necessarily equates with and establishes* the mental state of deliberate and premeditated first degree murder." (*Id*. at p. 1232, fn. 3.)

There is no merit in defendant's argument that we are not bound to follow *Cortez*, because the issue decided in that case was whether the punishment for conspiracy to commit murder must be the same as the punishment for first degree murder, whereas here we decide whether it is possible to determine from other portions of the verdict that the defendant was found guilty on a proper theory. *Cortez* held in no uncertain terms that the mental states for conspiracy to commit murder and first degree murder are indistinguishable. We rely upon that principle in holding the guilty verdict for conspiracy to commit murder necessitated that the jury find defendant killed with willfulness, premeditation, and deliberation. It is of no import that the issues ultimately decided differ, as the penultimate holding was necessary to each decision. (See *Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455-456 [appellate court is bound to follow holdings of the Supreme Court].)

The jury's verdict confirms that the prosecution proved each of the elements of first degree murder beyond a reasonable doubt. There is no basis for reversal.

8

*Kidnapping Special Circumstance*

Defendant next contends that the trial court erred in its instructions to the jury regarding the kidnapping special circumstance under section 190.2, subdivision (a)(17)(B). Defendant argues that to find the special circumstance true, the jury must first find: (1) the kidnapping was committed for a purpose independent of the murder rather than being incidental to it; and (2) the murder was committed to advance the independent felonious purpose. Defendant asserts that the trial court failed to instruct the jury as to the second requirement for kidnapping special circumstance, thereby lessening the burden on the prosecution in violation of his due process rights. We disagree.

The trial court instructed the jury pursuant to CALCRIM No. 730, which provides in relevant part: "[I]n order for this special circumstance to be true, the People must prove that the defendant intended to commit the crime of kidnapping independent of the killing. If you find that the defendant only intended to commit murder and the commission of the crime of kidnapping was merely part of or incidental to the commission of that murder, then the special circumstance has not been proved." Defendant did not object to this instruction.

The Attorney General argues that defendant's failure to object below forfeits the claim on appeal. Instructional error may be raised for the first time on appeal if it implicates defendant's substantial rights, however, as defendant here claims. (§ 1259; *People v. Salcido* (2008) 44 Cal.4th 93, 155.) "Because defendant contends the instruction reduced the prosecutors [*sic*] burden of proof, thus affecting one of his fundamental constitutional rights, we entertain the claim on its merits." (*Ibid.*)

Section 190.2, subdivision (a)(17) provides the penalty for a defendant found guilty of first degree murder is life in prison without the possibility of parole or death, when "[t]he murder was committed while the defendant was engaged in, or was an accomplice in, the commission of, attempted commission of, or the immediate flight after

9

committing, or attempting to commit [an enumerated felony]," which includes kidnapping.

In *People v. Green* (1980) 27 Cal.3d 1, 62 (*Green*), overruled on other grounds as noted in *People v. Dominguez* (2006) 39 Cal.4th 1141, 1155, footnote 8, the Supreme Court set aside the jury's robbery special circumstance finding. Although the trial court had properly instructed the jury that to find the robbery special allegation true, it must first find defendant guilty of the underlying robbery, it did not instruct the jury that the murder must have been committed "'during the commission'" of the robbery. (*Id*. at p. 60.) The *Green* court held that failure to so instruct was reversible error. It reasoned that such instruction "ignored key language of the statute: it was not enough for the jury to find the defendant guilty of a murder *and* one of the listed crimes; the statute also required that the jury find the defendant committed the murder 'during the commission or attempted commission of' that crime. (Former § 190.2, subd. (c)(3).) In other words, a valid conviction of a listed crime was a necessary condition to finding a corresponding special circumstance, but it was not a sufficient condition: the murder must also have been committed 'during the commission' of the underlying crime." (*Green*, *supra*, at p. 59.) As the court explained, "[T]he Legislature must have intended that each special circumstance provide a rational basis for distinguishing between those murderers who deserve to be considered for the death penalty and those who do not. The Legislature declared that such a distinction could be drawn, inter alia, when the defendant committed a 'willful, deliberate and premeditated' murder 'during the commission' of a robbery or other listed felony. (Former § 190.2, subd. (c)(3).) The provision thus expressed a legislative belief that it was not unconstitutionally arbitrary to expose to the death penalty those defendants who killed in cold blood in order to advance an independent felonious purpose, e.g., who carried out an execution-style slaying of the victim of or witness to a holdup, a kidnaping, or a rape." (*Green*, *supra*, at p. 61, fn. omitted.)

Relying on the Ninth Circuit's opinion in *Clark v. Brown* (9th Cir. 2006) 450 F.3d 898, 905, defendant urges us to interpret the *Green* court's statement that murder subject to a special circumstance "advance[s] an *independent felonious purpose*" as announcing a

10

requirement additional to the one that the murder be "during the commission" of an enumerated felony. He argues that the trial court was required to give CALJIC No. 8.81.17, which tracks the language of *Green*.[4]

We decline to follow *Clark v. Brown*, *supra*, 450 F.3d 898, as it directly contradicts state authority on the matter. Our Supreme Court did not set forth an additional requirement in *Green*. To the contrary, it has repeatedly stated that "'there is no requirement that the prosecution prove an additional or different element that the killing be committed to "advance"' or carry out the felony. (*People v. Dykes* (2009) 46 Cal.4th 731, 760-761.)" (*People v. Dement* (2011) 53 Cal.4th 1, 47.) Nor has our high court mandated that the "advance an independent felonious purpose" language be included in instructions to the jury. In *People v. Horning* (2004) 34 Cal.4th 871 (*Horning*), the court rejected the defendant's argument that the trial court erred in omitting from CALJIC No. 8.81.17 the very "advance" language that defendant now advocates: "As the transitional words in the instruction, 'In other words,' suggest, *Green* established one requirement, not two. The point we made in *People v. Green*, *supra*, 27 Cal.3d 1, is that if the felony was merely incidental to the murder—as the evidence showed it was in *Green*—no separate felony-based special circumstance exists. We have used various phrasings in explaining this requirement, two of which are included in CALJIC No. 8.81.17, but we have never suggested that we had created two separate requirements, or that any precise language was required to explain the concept to the jury. There is nothing magical about the phrase 'to carry out or advance' the felony. Indeed, we ourselves have stated the requirement without using that phrase. (See *People v.*

_____

[4] CALJIC No. 8.81.17 states in pertinent part: "To find that the special circumstance referred to in these instructions as murder in the commission of _____ is true, it must be proved: [¶] [¶] [¶] [2. The murder was committed in order to carry out or advance the commission of the crime of _____ or to facilitate the escape therefrom or to avoid detection. In other words, the special circumstance referred to in these instructions is not established if the [attempted] _____ was merely incidental to the commission of the murder.]"

11

*Mendoza* [(2000)] 24 Cal.4th [130,] 182; *People v. Clark* (1990) 50 Cal.3d 583, 608.) Several ways exist to explain the requirement . . . . [T]he court's explanation that the burglary or robbery must not be 'merely incidental to the commission of the murder,' adequately conveyed the requirement." (*Horning*, *supra*, at pp. 907-908, fn. omitted.) Moreover, the Supreme Court has indicated that CALCRIM No. 730 accurately states the *Green* rule, and has stated that CALCRIM No. 730 is clearer in its articulation of the rule than CALJIC No. 8.81.17. (*People v. Boyce* (2014) 59 Cal.4th 672, 697, fn. 14.) In light of state precedent, we conclude that the trial court did not err in instructing the jury. (See *Auto Equity Sales, Inc. v. Superior Court, supra,* 57 Cal.2d at pp. 455-456.)

**_Proof Beyond a Reasonable Doubt_**

Defendant contends that the trial court's general instruction that proof beyond a reasonable doubt was required for conviction was insufficient to inform the jury that each element of every individual crime, special circumstance, and enhancement alleged must be proven beyond a reasonable doubt. The trial court did not err in instructing the jury on the burden of proof.

We review de novo the question of whether a jury instruction correctly states the law. (*People v. Posey* (2004) 32 Cal.4th 193, 218.) "Review of the adequacy of instructions is based on whether the trial court 'fully and fairly instructed on the applicable law.' [Citation.] '"In determining whether error has been committed in giving or not giving jury instructions, we must consider the instructions as a whole . . . [and] assume that the jurors are intelligent persons and capable of understanding and correlating all jury instructions which are given." [Citation.]' [Citation.] 'Instructions should be interpreted, if possible, so as to support the judgment rather than defeat it if they are reasonably susceptible to such interpretation.' [Citation.]" (*People v. Ramos* (2008) 163 Cal.App.4th 1082, 1088 (*Ramos*).)

"Under the United States Constitution and California law, the government must prove each element of a charged offense beyond a reasonable doubt. [Citations.]

12

Whether an instruction correctly conveys this standard must be determined by examining the instruction in the context of all the instructions, given the jury. [Citation.]" (*People v. Wyatt* (2008) 165 Cal.App.4th 1592, 1601 (*Wyatt*).)

The trial court instructed the jury under CALCRIM No. 220, which states in relevant part: "A defendant in a criminal case is presumed to be innocent. This presumption requires that the People prove a defendant guilty beyond a reasonable doubt. Whenever I tell you the People must prove something, I mean they must prove it beyond a reasonable doubt . . . ."

Defendant did not object to the instruction, but, as with his previous contention, "[b]ecause defendant contends the instruction reduced the prosecutors [*sic*] burden of proof, thus affecting one of his fundamental constitutional rights, we entertain the claim on its merits." (*People v. Salcido, supra,* 44 Cal.4th at p. 155.)

As defendant concedes in his opening brief, at least four appellate courts have rejected similar arguments in published cases. (*People v. Riley* (2010) 185 Cal.App.4th 754, 767-770; *People v. Henning* (2009) 178 Cal.App.4th 388, 405-406 & fn. 3; *Wyatt, supra,* 165 Cal.App.4th at pp. 1600-1601; *Ramos, supra,* 163 Cal.App.4th at pp. 1087-1090.) Here, as in those cases, the jury was informed that in every instance in which it was charged with determining whether the prosecution proved something, proof must be beyond a reasonable doubt. For each offense, special circumstance, and enhancement, the trial court instructed: "To prove the defendant is guilty of [the relevant offense, special circumstance, or enhancement], the People must prove that: . . . ." Following this language was a list of elements in the conjunctive. Viewing these instructions as a whole, we conclude the trial court correctly instructed the jury that each and all of the elements of every offense, special circumstance, and enhancement must be proven beyond a reasonable doubt.

Defendant's citations to out-of-state authorities holding that the 'each element' or 'every element' language must be included in jury instructions on reasonable doubt are not persuasive. "While we do not doubt that the use of such language is appropriate [citation], defendant has not cited any California or United States Supreme Court

13

authority holding that it is constitutionally required." (*Ramos*, *supra*, 163 Cal.App.4th at p. 1090.)

### *Abstract of Judgment*

The Attorney General concedes, and we agree, that the parole revocation fee was unauthorized and must be stricken. Section 1202.45, subdivision (a) provides that "[i]n every case where a person is convicted of a crime and his or her sentence includes a period of parole, the court shall, at the time of imposing the restitution fine pursuant to subdivision (b) of Section 1202.4, assess an additional parole revocation restitution fine . . . ." Defendant was sentenced to life in prison without parole, which precludes imposition of the parole revocation fine. (*People v. Battle* (2011) 198 Cal.App.4th 50, 63.)

Additionally, our review of the record disclosed that the abstract of judgment does not conform to the oral pronouncement of judgment. At the sentencing hearing on December 13, 2013, the trial court orally imposed one-year enhancements under section 12022, subdivision (a)(1), and two-year enhancements under section 12022.5, subdivision (a), as to all counts. Pursuant to section 654, it stayed the section 12022, subdivision (a)(1) enhancements as to all counts, and the section 12022.5, subdivision (a) enhancements as to all but count 2. However, the abstract of judgment filed December 23, 2013, fails to reflect the enhancement imposed under section 12022, subdivision (a)(1), and stayed pursuant to section 654, as to all counts. It also erroneously reflects that the two-year enhancement pursuant to section 12022.5, subdivision (a), was stayed in count 2.

Where there are discrepancies between the oral pronouncement of judgment and the abstract of judgment, the oral pronouncement controls. (*People v. Mitchell* (2001) 26 Cal.4th 181, 185.) Accordingly, the abstract of judgment must be corrected to properly reflect the trial court's oral pronouncement of judgment at sentencing.

**DISPOSITION**

The trial court is directed to prepare an corrected abstract of judgment to reflect that: (1) the parole revocation fine is stricken; (2) a one-year enhancement was imposed as to all counts pursuant to section 12022, subdivision (a)(1), and stayed; and (3) the two-year enhancement imposed in count 2 pursuant to section 12022.5, subdivision (a), was not stayed. The trial court shall forward a certified copy of the amended abstract of judgment to the Department of Corrections and Rehabilitation. In all other respects, the judgment is affirmed.


KRIEGLER, J.


We concur:


TURNER, P. J.


KIRSCHNER, J.*

---

* Judge of the Los Angeles County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.