Filed 5/23/16  P. v. Rodriguez CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> ROBERTO GUADALUPE RODRIGUEZ, <br><br> Defendant and Appellant. | D069656 <br><br><br> (Super. Ct. No. RIF1303718) |

APPEAL from a judgment of the Superior Court of Riverside County, Bernard J. Schwartz, Judge.  Affirmed.

George L. Schraer for Appellant and Defendant.

Kamala D. Harris, Attorney General, Gerald A. Engler and Julie L. Garland, Assistant Attorneys General, A. Natasha Cortina, Alastair J. Agcaoili and Allison Hawley, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted Robert Guadalupe Rodriquez of first degree murder (Pen. Code, § 187, subd. (a)) of his wife, Mary Jane Rodriguez, and found he personally used a deadly weapon (a knife) in the commission of the offense.  (Pen. Code, § 12022, subd.

(b).)  The trial court sentenced Rodriguez to a total prison term of 26 years to life: 25 years to life for the first degree murder and one year for the deadly weapon enhancement. Asserting that "provocation in the context of second degree murder has a technical meaning peculiar to the law," Rodriguez contends the court committed federal constitutional error by failing to instruct the jury sua sponte on that term's technical and peculiar meaning.  We reject the contention, and affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

In the early morning hours of April 11, 2013, Rodriguez stabbed his wife to death with a large butcher knife.  About 20 or 30 minutes later, he called 911 and told police to come to his house.  In police interviews, Rodriguez stated he had learned two or three years earlier that his wife had been communicating and rendezvousing with other men and had engaged in an affair with a man in Texas in particular.  Rodriguez told the investigator he believed his wife expected to take all of their money and wait for him to die so she could be with other men.  Though they had engaged in marital counseling, Rodriguez had filed for divorce and began taking steps to protect himself financially.

Rodriguez told the investigator that on the morning of April 11, 2013, he woke up feeling angry and "stupid" that his wife had gone out to entice men the night before.  He went to their kitchen and got a knife, returned to their bedroom and stabbed her while she struggled with him, explaining that he "went crazy."  When asked what was going through his head before he killed her, Rodriguez told the investigator, "Anger, . . . why you keep doing this to me . . . why you just go away [*sic*], don't torture—I don't wanna

2

say torcher [*sic*], but it's painful."  Rodriguez agreed that before the murder he was "very angry."

The medical examiner found 25 separate stab wounds on the victim with several potentially or individually fatal.  Many of them were located to the left side of her body and on her back.  One went through the left side of her chest into her lung and heart.  That wound would have left the victim between three and five minutes to live; medical intervention would not have saved her.

Rodriguez, who had worked as a middle school wood shop teacher, presented character witnesses in his defense, who testified they were shocked by the crime.  The principal at his school testified Rodriguez was a "calm, very patient, very quiet" teacher who was never violent.  Rodriguez's former brother-in-law who knew Rodriguez for 40 years testified that Rodriguez was trustworthy; he never saw him act violently and he was not quick to anger.  He testified that Rodriguez was not capable of hurting someone, and such conduct was inconsistent with Rodriguez's character.

The parties stipulated that in August 2012, Rodriguez and his wife had attended marriage counseling sessions individually and together, and that the last social media message between the victim and the Texas man occurred in April 2013.  The court admitted into evidence a letter that corroborated the victim had been communicating with another man on the Internet.

The trial court instructed the jury with CALCRIM No. 520 as to the elements of murder and malice aforethought.  It instructed with CALCRIM No. 521 as to murder and first degree murder, respectively, including by telling the jury that a defendant is guilty of

3

first degree murder if the People have proved he acted "willfully, deliberately, and with premeditation"; that a defendant acts deliberately "if he carefully weighed the considerations for and against his choice, and knowing the consequences, decided to kill" and with premeditation "if he decided to kill before completing the acts that caused the death"; and a "decision to kill made rashly, impulsively, or without careful consideration is not deliberate and premeditated."[1]  The court then instructed the jury at the defense's request with CALCRIM No. 522, regarding provocation, as follows:  "Provocation may reduce a murder from first degree to second degree and may reduce a murder to manslaughter.  The weight and significance of the provocation, if any, are for you to decide.  [¶]  If you conclude that the defendant committed murder but was provoked, consider the provocation in deciding whether the crime was first or second degree murder.  Also consider the provocation in deciding whether the defendant committed

---

[1]     The court instructed with CALCRIM No. 521 as follows:  "The defendant is guilty of first degree murder if the People have proved that he acted willfully, deliberately, and with premeditation.  [¶]  The defendant acted willfully if he intended to kill.  [¶]  The defendant acted deliberately if he carefully weighed the considerations for and against his choice, and knowing the consequences, decided to kill.  [¶]  The defendant acted with premeditation if he decided to kill before completing the act that caused the death.  The length of time the person spends considering whether to kill does not alone determine whether the killing is deliberate and premeditated.  The amount of time required for deliberation and premeditation may vary from person to person and according to the circumstances.  [¶]  A decision to kill made rashly, impulsively, or without careful consideration is not deliberate and premeditated.  On the other hand, a cold, calculated decision to kill can be reached quickly.  The test is the extent of the reflection, not the length of time.  [¶]  The People have the burden of proving beyond a reasonable doubt that the killing was first degree murder rather than a lesser crime.  If the People have not met this burden, you must find the defendant not guilty of first degree murder, and the murder would be of a second degree."

4

murder or manslaughter."  Rodriguez's counsel did not request clarification or amplification of that instruction.

The court also read CALCRIM No. 570, which defined the difference between murder and voluntary manslaughter based on a sudden quarrel or the heat of passion, as follows:  "A killing that would otherwise be murder is reduced to voluntary manslaughter if the defendant killed someone because of a sudden quarrel or . . . because of a heat of passion.

"The defendant killed someone because of a heat of passion if the following elements are met:

"One, the defendant was provoked;

"Two, as a result of the provocation, the defendant acted rashly and under the influence of intense emotion that obscured his reasoning or judgment;

"And three, the provocation would have caused a reasonable person of average disposition to act rashly and without due deliberation, that is, from passion rather than from judgment.

"Heat of passion does not require anger, rage, or any specific emotion.  It can be any violent or intense emotion that causes a person to act without due deliberation and reflection.

"In order for heat of passion to reduce a murder to voluntary manslaughter, the defendant must have acted under the direct and immediate influence of provocation as I have defined it.  While no specific type of provocation is required, slight or remote provocation is not sufficient.

"Sufficient provocation may occur over a short or long period of time. It is not enough that the defendant simply was provoked. The defendant is not allowed to set up his own standard of conduct. You must decide whether the defendant was provoked and whether the provocation was sufficient.

"In deciding whether the provocation was sufficient, consider whether a person of average disposition in the same situation and knowing the same facts would have reacted from passion rather than from judgment.

"If enough time passed between the provocation and the killing for a person of average disposition to cool off and regain his or her clear reasoning and judgment, then the killing is not reduced to voluntary manslaughter on this basis.

"The People have the burden of proving beyond a reasonable doubt that the defendant did not kill as a result of a heat of passion. If the People have not met this burden, you must find the defendant not guilty of murder."

Defense counsel sought to modify CALCRIM No. 570 on grounds the instruction shifted the burden to the defense to bring evidence reducing murder to voluntary manslaughter. Rodriguez's counsel also sought a special instruction telling the jury that the absence of heat of passion and provocation was an essential element of murder that the prosecution had to prove beyond a reasonable doubt. The court rejected these requests.

DISCUSSION

Rodriguez's sole contention on appeal is that the trial court reversibly erred under federal constitutional standards by failing to instruct the jury sua sponte with the standard

6

used for provocation in the context of second degree murder, which he asserts has a technical or legal meaning relating to the effect that provocation has on the defendant's subjective state of mind. He argues that under this standard, provocation applies even if the conduct that provoked the defendant would not provoke a reasonable person or an ordinary person of average disposition, and that because the term differs from the ordinary definition and has a technical meaning peculiar to the law, the court had a sua sponte duty to give an amplifying or clarifying instruction. According to Rodriguez, this duty was particularly important where the court instructed the jury in detail on provocation for purposes of voluntary manslaughter, giving rise to a danger that the jury would give the term an incorrect meaning and making it unable to return a verdict for second degree murder. In advancing these arguments, Rodriguez acknowledges that his claims may appear to be undermined by *People v. Mayfield* (1997) 14 Cal.4th 668, overruled on other grounds in *People v. Scott* (2015) 61 Cal.4th 363, 390; *People v. Hernandez* (2010) 183 Cal.App.4th 1327 (*Hernandez*) and *People v. Jones* (2014) 223 Cal.App.4th 995, but he seeks to distinguish them on grounds they do not address the specific issue he raises.

The People concede that a trial court has a sua sponte duty to instruct the jury on familiar words and phrases where the jury instructions use those terms in a technical, legal sense. They argue the court had no such duty in this case because CALCRIM No. 522 uses the term provocation in the common, nonlegal sense of the word, and that binding authority, including the above-referenced cases, should compel us to reject Rodriguez's contentions and hold he forfeited them by failing to request clarifying

7

instructions in the trial court.  They further argue that reversal is unwarranted because any purported error is harmless under the applicable state law standard of harmless error or even the federal standard were that to apply, in view of the jury instructions given and the strong evidence of Rodriguez's premeditation and deliberation.  As we explain, we agree with the People.

I. *Standard of Review and Instructional Error Principles*

We review a claim of instructional error de novo.  (*People v. Posey* (2004) 32 Cal.4th 193, 218; *People v. Alvarez* (1996) 14 Cal.4th 155, 217 [instructional error reviewed independently as the underlying question is " 'one of law, involving as it does the determination of . . . applicable legal principles' "]; *People v. Riley* (2010) 185 Cal.App.4th 754, 767.)  A trial court has a duty to instruct the jury sua sponte on general principles that are closely and openly connected with the facts before the court.  (*People v. Gutierrez* (2009) 45 Cal.4th 789, 824.)  "[E]ven if the court has no sua sponte duty to instruct on a particular legal point, when it does choose to instruct, it must do so correctly.  [Citation.]  Once the trial court adequately instructs the jury on the law, it has no duty to give clarifying or amplifying instructions absent a request."  (*Hernandez*, *supra*, 183 Cal.App.4th at p. 1331.)  Accordingly, " 'a party may not complain on appeal that an instruction correct in law and responsive to the evidence was too general or incomplete unless the party has requested appropriate clarifying or amplifying language.' "  (*People v. Hudson* (2006) 38 Cal.4th 1002, 1011-1012.)  This "rule does not apply when . . . the trial court gives an instruction that is an incorrect statement of the law."  (*Id.* at p. 1012.)

8

"In reviewing a claim that the court's instructions were incorrect or misleading, we inquire whether there is a reasonable likelihood the jury understood the instructions as asserted by the defendant. [Citation.] We consider the instructions as a whole and assume the jurors are intelligent persons capable of understanding and correlating all the instructions." (*Hernandez*, *supra*, 183 Cal.App.4th at p. 1332.)

## II. *The Law of Homicide*

"First degree murder is an unlawful killing with malice aforethought, premeditation, and deliberation [Citation.] Malice may be express (intent to kill) or implied (intentional commission of life-threatening act with conscious disregard for life). [Citation.] Second degree murder is an unlawful killing with malice, but without the elements of premeditation and deliberation which elevate the killing to first degree murder." (*Hernandez*, *supra*, 183 Cal.App.4th at p. 1332.) Thus, first degree murder may be mitigated to second degree murder where premeditation and deliberation are negated by heat of passion arising from provocation. (*Ibid*.) Provocation reducing first degree murder to second degree murder "would not cause an average person to experience deadly passion but it precludes the defendant from subjectively deliberating or premeditating . . . ." (*Ibid*.; *People v. Fitzpatrick* (1992) 2 Cal.App.4th 1285, 1295-1296; *People v. Padilla* (2002) 103 Cal.App.4th 675, 677-678.)

If provocation causes an ordinary person to react with deadly passion, the crime is further reduced to voluntary manslaughter. (*People v. Trinh* (2014) 59 Cal.4th 216, 232; *Hernandez*, *supra*, 183 Cal.App.4th at p. 1332; *People v. Jones*, *supra*, 223 Cal.App.4th at pp. 1000-1001.) The provocation sufficient to reduce murder to voluntary

9

manslaughter requires not only that the defendant subjectively experience a heat of passion resulting from the provocation but also have an objectively reasonable response: that is, an unlawful killing is voluntary manslaughter " '[i]f the killer's reason was actually obscured as the result of a strong passion aroused by a "provocation" sufficient to cause an " 'ordinary [person] of average disposition . . . to act rashly or without due deliberation and reflection . . . .' " ' " (*People v. Lasko* (2000) 23 Cal.4th 101, 108; see also *People v. Beltran* (2013) 56 Cal.4th 935, 942; *People v. Gutierrez* (2002) 28 Cal.4th 1083, 1143; *People v. Steele* (2002) 27 Cal.4th 1230, 1254.)

### III. *Analysis*

We reject Rodriguez's claim of instructional error because, as we explain more fully below, (1) any further instruction explaining how provocation must affect the defendant so as to reduce first degree murder to second degree murder is a pinpoint instruction that the court has no sua sponte duty to give (see *People v. Souza* (2012) 54 Cal.4th 90, 118; *People v. Rogers* (2006) 39 Cal.4th 826, 878-879; *People v. Mayfield*, *supra*, 14 Cal.4th at p. 778; *People v. Lee* (1994) 28 Cal.App.4th 1724, 1732-1734) and (2) in this context, the term "provocation" is not used in a technical sense peculiar to the law. (*Hernandez*, *supra*, 183 Cal.App.4th at p. 1334.)

### A. *Pinpoint Instruction*

"Pinpoint instructions 'relate particular facts to a legal issue in the case or "pinpoint" the crux of a defendant's case' " and must be given on request " 'when there is evidence supportive of the theory . . . .' " (*People v. Wilkins* (2013) 56 Cal.4th 333, 348-349; quoting *People v. Saille* (1991) 54 Cal.3d 1103, 1119.) Such instructions relating

not to a defense, but rather to an attempt to raise a reasonable doubt as to an element of the crime, need not be given sua sponte but must be given only upon request. (*People v. Anderson* (2011) 51 Cal.4th 989, 996-997; *Saille*, at p. 1120.)

In *People v. Rogers*, *supra*, 39 Cal.4th 826, the defendant, who had been convicted of first degree murder, asserted the trial court erred by failing to instruct with an instruction similar to then CALJIC No. 8.73[2] "that provocation inadequate to reduce a killing from murder to manslaughter nonetheless may suffice to negate premeditation and deliberation, thus reducing the crime to second degree murder." (*Id.* at pp. 877-878.) The defendant had not requested such an instruction. The Supreme Court held that any such instruction was a pinpoint instruction because it "relates the evidence of provocation to the specific legal issue of premeditation and deliberation" and "need not be given on the court's own motion." (*Id.* at pp. 878-879; see also *People v. Mayfield*, *supra*, 14 Cal.4th at p. 778; *Hernandez*, *supra*, 183 Cal.App.4th at p. 1333.) Because evidence that a defendant was unreasonably provoked may create doubt concerning the existence of deliberation and premeditation, an instruction defining the type of provocation needed to reduce first degree to second degree is a pinpoint instruction that does not need to be given sua sponte. (*Rogers*, at pp. 878-879; see *People v. Enraca* (2012) 53 Cal.4th 735, 760; *People v. Lee*, *supra*, 28 Cal.App.4th at pp. 1732-1734.)

---

2      That instruction provided:  "If the evidence establishes that there was provocation which played a part in inducing an unlawful killing of a human being, but the provocation was not sufficient to reduce the homicide to manslaughter, you should consider the provocation for the bearing it may have on whether the defendant killed with or without deliberation and premeditation."  (CALJIC No. 8.73.)

11

Rodriguez concedes this point, but he maintains that an exception applies to this rule when the term used by the court has a technical meaning peculiar to the law. Under this exception, he contends, a sua sponte duty *does* arise to give the instruction. Rodriguez argues that in this case, provocation in the context of second degree murder has a technical meaning peculiar to the law, "not to the nature of the provocation, but rather to its effect," which is "the impact of the provocation on the defendant's subjective state of mind." He points out that the dictionary definition of the word provocation does not mention anything about the effect of the provocation "in terms of whether the defendant subjectively has been provoked or whether an ordinary person of average disposition would be provoked." We are not persuaded.

B. *Provocation as Used in CALCRIM No. 522 Has Its Ordinary Meaning*

We have no quarrel with the general principles on which Rodriguez relies. " 'If a statutory word or phrase is commonly understood and is not used in a technical sense, the court need not give any sua sponte instruction as to its meaning.' " (*People v. Lucas* (2014) 60 Cal.4th 153, 296, disapproved on other grounds in *People v. Romero and Self* (2015) 62 Cal.4th 1, 53, fn. 19; *People v. Griffin* (2004) 33 Cal.4th 1015, 1022-1023.) However, a court's obligation to give instructions without request by either party " 'comes into play when a statutory term "does not have a plain, unambiguous meaning," has a "particular and restricted meaning" [citation], or has a technical meaning peculiar to the law or an area of law.' " (*People v. Hudson*, *supra*, 38 Cal.4th at p. 1012.) A word has a technical legal meaning requiring clarification by the court when its definition differs

12

from its nonlegal meaning.  (*People v. Cross* (2008) 45 Cal.4th 58, 68; *Hudson*, at p. 1012.)

We disagree that CALCRIM No. 522 uses the word provocation in any other sense than its ordinary meaning as " 'something that provokes, arouses, or stimulates' " or " 'the defendant's emotional reaction to the conduct of another . . . .' "  (*Hernandez*, *supra*, 183 Cal.App.4th at p. 1334.)  The California Supreme Court has stated as such in a similar context.  (See *People v. Cole* (2004) 33 Cal.4th 1158, 1217-1218 [provocation as used in CALJIC No. 8.73 "bore [its] common meaning, which required no further explanation in the absence of a specific request"]; *People v. Ward* (2005) 36 Cal.4th 186, 215 ["[t]he evidentiary premise of a provocation defense is the defendant's emotional reaction to the conduct of another, which emotion may negate a requisite mental state"; defining provocation by Merriam-Webster's Collegiate Dictionary].)  And this court so held in *Hernandez*, when we explained that in the context of CALCRIM No. 522, "provocation was not used in a technical sense peculiar to the law" and assumed the jurors were aware of the common meaning of the term.  (*Hernandez*, *supra*, 183 Cal.App.4th at p. 1334.)

Rodriguez characterizes *Hernandez* as inapposite, and its conclusion as flawed dictum.  He first maintains that provocation in the context of CALCRIM No. 522 is used in a technical sense.  But this assertion would have us simply disagree with *Hernandez*'s conclusion.  It does not explain why *Hernandez*'s point is dictum in light of the facts of the case or otherwise not necessary to determine the issue before it.  To the contrary, *Hernandez* addressed the very issues raised by Rodriguez's argument.  In *Hernandez*, the prosecution sought to convict defendant of first degree premeditated murder, and the

13

defendant claimed he acted in reasonable self-defense supporting acquittal, or unreasonable self-defense supporting a verdict of voluntary manslaughter. (*Hernandez*, *supra*, 183 Cal.App.4th at p. 1331.) In addition to instructions on those defenses, the defendant asked the court to instruct the jury on provocation to support a verdict of second degree murder with CALCRIM No. 522, without asking that it be clarified or amplified. (*Ibid.*)

On appeal from his first degree murder conviction, the defendant claimed CALCRIM No. 522, the same instruction on provocation given in this case, was incomplete and misleading in part because it did not specify that provocation could negate premeditation or deliberation necessary for first degree murder. (*Hernandez*, *supra*, 183 Cal.App.4th at p. 1331.) We rejected that claim of instructional error, pointing out such an instruction would be a pinpoint instruction that need not be given sua sponte absent a request, and because the trial court was not required to give the instruction at all, it was not misleading to give CALCRIM No. 522 without expressly using the defendant's proposed language, particularly when it was given in conjunction with CALCRIM No. 521. (*Id.* at pp. 1333-1334.) "Although CALCRIM No. 522 does not expressly state provocation is relevant to the issues of premeditation and deliberation, when the instructions are read as a whole there is no reasonable likelihood the jury did not understand this concept. Based on CALCRIM No. 521, the jury was instructed that unless the defendant acted with premeditation and deliberation, he is guilty of second, not first, degree murder, and that a rash, impulsive decision to kill is not deliberate and

premeditated. Based on CALCRIM No. 522, the jury was instructed that provocation may reduce the murder to second degree murder." (*Id*. at p. 1334.)

This court in *Hernandez* further held that provocation in this context was not used in a technical sense, which as we have explained above, would have required the court to give the instruction sua sponte. (*Hernandez*, *supra*, 183 Cal.App.4th at p. 1334.) Thus, *Hernandez* concluded that "even without express instruction, the jurors understood that the existence of provocation can support the absence of premeditation and deliberation" and "without a request for further instruction, the trial court was not required to amplify the instructions to explain this point." (*Id*. at p. 1334.) Notwithstanding the defendant in *Hernandez* did not expressly argue that provocation had a technical meaning, our conclusions in *Hernandez* directly addressed, and were necessary to resolve, the defendant's claim that the court committed instructional error by giving CALCRIM No. 522 without the additional proposed language.

Rodriguez further argues that *Hernandez*'s statement is flawed because the case "contains no discussion of the subjective standard of provocation in the context of second degree murder and the objective standard of provocation in the context of voluntary manslaughter based on heat of passion." Rodriguez claims this "indicates . . . *Hernandez* did not consider that provocation in the context of homicide requires something more than the common definition of the term . . . ." The argument is simply incorrect. *Hernandez* expressly recognized the subjective and objective distinction as to how provocation will reduce first degree to second degree murder, and how it will further reduce the crime to voluntary manslaughter. (*Hernandez*, *supra*, 183 Cal.App.4th at

15

p. 1332, citing *People v. Fitzpatrick*, *supra*, 2 Cal.App.4th at pp. 1295-1296.) This court was well aware of the standards when it concluded, correctly, that the word provocation in CALCRIM No. 522 was not used in a technical sense. In either case, the word provocation has its standard meaning, regardless of the effect the provocation has on the defendant and the resulting penal consequences.

Rodriguez additionally points out that in *Hernandez*, unlike this case, the jury was not instructed with CALCRIM No. 570, which set out an objective test for reducing murder to voluntary manslaughter. By this point, Rodriguez apparently suggests the jury in this case was misled by the objective standard, whereby the "defendant is not allowed to set up his own standard of conduct." We disagree. This was an argument rejected by the California Supreme Court in *People v. Rogers*, *supra*, 39 Cal.4th 826, where the jury was instructed on provocation as it relates to voluntary manslaughter but not provocation as it related to second degree murder. (*Id.* at pp. 879-880.) On the defendant's claim that the court erred by not instructing on provocation sua sponte, the court concluded the omission of such an instruction was not misleading: "[T]he standard manslaughter instruction is not misleading, because the jury is told that premeditation and deliberation is the factor distinguishing first and second degree murder. Further, the manslaughter instruction does not preclude the defense from arguing that provocation played a role in preventing the defendant from premeditating and deliberating; nor does it preclude the jury from giving weight to any evidence of provocation in determining whether premeditation existed." (*Id.* at p. 880.) *Rogers* held the sought-after instruction was a pinpoint instruction that the court did not need to give on its own motion. (*Ibid.*)

16

This court reached a similar conclusion in *Hernandez*, in response to the defendant's argument that CALCRIM No. 522 was deficient because it did not instruct the jury that provocation insufficient to reduce the crime to manslaughter may nevertheless be sufficient to reduce the crime from first degree to second degree murder. (*Hernandez*, *supra*, 183 Cal.App.4th at p. 1335.) We rejected the contention: "CALCRIM No. 522 instructs the jury to 'consider the provocation in deciding whether the crime was first or second degree murder' and 'consider the provocation in deciding whether the defendant committed murder or manslaughter.' Thus, the instruction plainly states the jury should consider provocation for *both* second degree murder and manslaughter." (*Ibid.*) In this case, reviewing the instructions given as a whole as we must, we cannot say the jury would be misled. (*People v. Rogers*, *supra*, 39 Cal.4th at p. 880; *Hernandez*, at p. 1334.)[3]

Our conclusions are further supported by *People v. Jones*, *supra*, 223 Cal.App.4th 995, in which the trial court, as in this case, instructed the jury with CALRIM Nos. 520, 521, 522, and 570. (*Id.* at p. 999.) In *Jones*, the defendant argued, similar to Rodriguez's insinuation as to the giving of CALCRIM No. 570 here, that the pattern instructions were

_____

3    In a footnote, *Hernandez* stated: "The lack of error in this particular case is further supported by the fact that, apart from the brief reference to manslaughter in the CALCRIM No. 522 provocation instruction, the jury was not otherwise instructed on a heat of passion/provocation theory of voluntary manslaughter. Thus, the jury would not have focused on the provocation evidence for purposes of manslaughter while failing to consider it for purposes of second degree murder." (*Hernandez*, *supra*, 183 Cal.App.4th at p. 1335, fn. 5.) *Hernandez* does not suggest that the giving of CALCRIM No. 570 would have caused the jury to misdirect its focus, and here, Rodriguez gives no indication—other than the two-day length of deliberations—that persuades us the jurors put undue focus on the standards expressed in that instruction.

17

likely to have misled the jury into concluding that the provocation standard to reduce murder to voluntary manslaughter also applied to reduce first to second degree murder. (*Id*. at p. 1001.) The Court of Appeal in *Jones*, applying *Hernandez*'s reasoning, held the instructions were correct taken together and that defense counsel's failure to request a more specific, or pinpoint, instruction forfeited his claim on appeal. (*Ibid.*)

These authorities compel us to conclude the trial court gave full and correct instructions on the law, and it was not required to give sua sponte any further instruction than CALCRIM No. 522 regarding provocation in the context of reducing first degree to second degree murder.

## IV. *Prejudice*

Even if the trial court somehow erred by not giving an additional instruction on its own motion, we would nevertheless conclude Rodriguez suffered no conceivable prejudice. In reaching this conclusion, we reject Rodriguez's argument that the federal constitutional standard of harmless error set forth in *Chapman v. California* (1967) 386 U.S. 18, 24 applies. Rodriguez relies on *People v. Thomas* (2013) 218 Cal.App.4th 630, but the instructions given here were unlike the instructions administered in *Thomas*, which were "bereft of any indication that the jury could consider [defendant's] emotional excitement as a factor that could reduce his criminal culpability" by negating malice. (*Id*. at p. 645.)[4] Here, as we have concluded, the jury was properly instructed via CALCRIM

---

[4]     In *Thomas*, there was evidence of a heated argument between the defendant and the victim before the shooting, and the defendant testified at trial that the victim hit him

18

Nos. 521 and 522 as to all of the degrees of murder and how provocation would reduce the degree of murder to either second degree murder or voluntary manslaughter. Rodriguez makes no argument that the prosecutor misapplied those standards or somehow incorrectly stated the People's burden of proof. Further, unlike the defendant in *Thomas*, the jury here found Rodriguez guilty of first degree, not second degree, murder. (*Thomas*, at p. 641.) In finding him guilty of first degree murder, "the jury necessarily found defendant premeditated and deliberated the killing. This state of mind, involving planning and deliberate action, is manifestly inconsistent with having acted under the heat of passion—even if that state of mind was achieved after a considerable period of provocatory conduct." (*People v. Wharton* (1991) 53 Cal.3d 522, 572; see also *People v. Carasi* (2008) 44 Cal.4th 1263, 1306.)

An error is prejudicial under *People v. Watson* (1956) 46 Cal.2d 818 if, " ' " ' "after an examination of the entire cause, including the evidence," [the reviewing court] is of the "opinion" that it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error.' " ' " (*People v. Wilkins* (2013) 56 Cal.4th 333, 351.) Our Supreme Court has stated that " 'a "probability" in this context does not mean more likely than not, but merely a reasonable chance, more than an abstract possibility.' " (*Ibid*., italics omitted.)

The evidence in this case was quite weak as to provocation, if any, by Rodriguez's wife that would cause Rodriguez to actually but unreasonably react from passionate

and then lunged at him after the defendant had retrieved a rifle and told the victim to not come closer. (*People v. Thomas*, *supra*, 218 Cal.App.4th at pp. 634-640.)

emotion so as to "play[] a role in preventing [him] from premeditating and deliberating."
(*People v. Rogers*, *supra*, 39 Cal.4th at p. 880.) The evidence must show the defendant
"formed the intent to kill as a direct response to . . . provocation and . . . acted
*immediately . . . .*" (*People v. Wickersham* (1982) 32 Cal.3d 307, 329, italics added,
disapproved on other grounds in *People v. Barton* (1995) 12 Cal.4th 186, 200-201.)[5]

Though Rodriguez's wife had left the house the evening before her death, there was no

---

[5]     We note that in *People v. Wright* (2015) 242 Cal.App.4th 1461, a majority panel
of the First District, Division One rejected the emphasis on *People v. Wickersham*'s
immediate conduct statement, observing that "[c]ases dealing with provocation have
considered behavior patterns that developed over a 'provocatory' period as opposed to
sudden and heightened instigative situations." (*Wright*, at p. 1486.) It referred to several
cases including *People v. Borchers* (1958) 50 Cal.2d 321, in which the 45-year-old
defendant realized his younger girlfriend was cheating on him during their months-long
relationship, and the court held the trial court could have concluded the defendant "was
roused to a heat of 'passion' by a series of events over a considerable period of time: [the
girlfriend's] admitted infidelity, her statements that she wished she were dead, her attempt
to jump from the car on the trip to San Diego, her repeated urging that defendant shoot
her, [her son] and himself on the night of the homicide, and her taunt, 'are you chicken.'
. . . [T]he evidence on the issue of not guilty supports a finding that defendant killed in
wild desperation induced by [the girlfriend's] long continued provocatory conduct."
(*Borchers*, at pp. 328-329.) Similarly, in *People v. Berry* (1976) 18 Cal.3d 509, the
defendant was a 46-year-old man who killed his 20-year-old wife, who had left the
country three days after they were married. (*Berry*, at p. 512.) When she returned, she
told the defendant she had fallen in love with another man who she had sexual relations
with, and wanted a divorce. (*Id*. at p. 513.) For the next two weeks, the wife taunted the
defendant with her involvement with the other man but also indicated her desire to
remain with the defendant. A defense psychiatrist testified the wife was a depressed and
suicidally-inclined woman who had taunted the defendant in an unconscious desire to
provoke him into killing her, and that "as a result of this cumulative series of
provocations, defendant . . . was in a state of uncontrollable rage, completely under the
sway of passion." (*Id*. at pp. 513-514.) In *Wright*, a concurring justice disagreed with the
majority's conclusions about these cases, holding in them, "the built-up provocation
culminated in *some* event involving the killer and victim that—even if insufficient on its
own to have necessitated a heat-of-passion or provocation instruction—caused a
passionate or immediate reaction resulting in the killing." (*Wright*, 242 Cal.App.4th at p.

evidence of a heated argument or altercation between them, or that she said or did anything that was so shocking or inflammatory that it might have caused him to obscure his reasoning or judgment under a heat of passion. At this point, her perceived or actual infidelity had been going on for years, so it was not provocative for her to have left the house again. Indeed, Rodriguez and his wife apparently went to sleep that night without incident. She was asleep, or just waking up from sleep, when Rodriguez began his attack.

Furthermore, in our view, this was an overwhelming case of Rodriguez's premeditation and deliberation. "First degree willful, deliberate, and premeditated murder involves a cold, calculated judgment, including one arrived at quickly [citation], and is evidenced by planning activity, a motive to kill, or an exacting manner of death." (*People v. Carasi*, *supra*, 44 Cal.4th at p. 1306.) " 'Deliberation' refers to careful weighing of considerations in forming a course of action; 'premeditation' means thought over in advance. [Citations.] 'The process of premeditation and deliberation does not require any extended period of time. 'The true test is not the duration of time as much as it is the extent of the reflection.' " (*People v. Koontz* (2002) 27 Cal.4th 1041, 1080.) "[F]or instance, 'an execution-style killing may be committed with such calculation that the manner of killing will support a jury finding of premeditation and deliberation,

1502, conc. opn. of P. J. Humes.) Presiding Justice Humes stated, "[B]y not requiring evidence of *any* instigative circumstances, the majority essentially holds that such instructions must be given whenever evidence is presented that the killer and victim had a troubled relationship involving charged issues, such as infidelity or child custody. I do not believe that such an expansive holding is either compelled or proper—particularly when, as here, the killer effectively ambushes the victim." (*Id*. at p. 1504.)

despite little or no evidence of planning and motive.' " (*People v. Tafoya* (2007) 42 Cal.4th 147, 172.)

After knowing for years of his wife's perceived or actual infidelity and aware she had gone out the night before, Rodriguez awoke in the morning angry, walked to the kitchen to retrieve a knife, returned to the bedroom where his wife slept, and began to stab her repeatedly. In walking to and from the kitchen, Rodriguez had time to reflect on his actions. He forcefully stabbed his wife 25 times, including through her chest and back. Rodriguez's stab wound to her chest was fatal. That the jury found him guilty of first degree murder based on premeditation and deliberation shows that, notwithstanding evidence showing his anger toward his wife, the jury found he acted with reflection and careful consideration. Likewise, the jury could reasonably infer from the evidence that Rodriguez's manner of killing his wife demonstrated a deliberate plan to kill her. (See, e.g., *People v. San Nicolas* (2004) 34 Cal.4th 614, 658 [the number of wounds on the victim's body, many of which were fatal, led to reasonable inference defendant intended to kill the victim].) The fact the multiple wounds were clustered in areas containing vital organs suggests a preconceived design to kill, rather than a sudden explosion of violence. (See *People v. Prince* (2007) 40 Cal.4th 1179, 1253; *People v. Elliot* (2005) 37 Cal.4th 453, 471 [three potentially lethal knife wounds, repeated throat slashing and numerous other stab wounds could be construed as suggesting a premeditated design to kill].)

Given the state of the evidence, and the jury's verdict reflecting its finding that Rodriguez acted with premeditation and deliberation rather than rashly or impulsively, we cannot say it is reasonably probable the jury would have found he subjectively acted

22

out of passion even if the court had given further instruction on provocation in the context of second degree murder.

DISPOSITION

The judgment is affirmed.


O'ROURKE, J.

WE CONCUR:

McCONNELL, P. J.

NARES, J.